

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

## NO. 2-07-166-CR

DARRELL GLENN BELL                                                      APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 2 OF TARRANT COUNTY

------------

## MEMORANDUM OPINION[1]

------------

### I. Introduction

Appellant Darrell Glenn Bell appeals his conviction for capital murder. In twelve points, appellant argues that the evidence is legally and factually insufficient, that the indictment failed to contain notice of the State's intent to establish his criminal responsibility as a party or conspirator under Chapter 7 of the Texas Penal Code, that the trial court erred by denying his request for a

---

[1] *See* TEX. R. APP. P. 47.4.

lesser included offense instruction on conspiracy to commit capital murder and conspiracy to commit aggravated robbery, that the trial court erred by denying his request for a benefit of the doubt instruction in the jury charge, that the trial court erred by denying his request for an accomplice witness instruction, that the trial court erred by denying his request for an independent impulse rule instruction regarding the conduct of Tarrence L. Stevenson, that the prosecutor commented on appellant's silence, and that Shawntee Abbs's written statement should have been excluded from evidence.  We affirm.

## II. Background Facts

On April 13, 2005, Patrick and Brenda Kilpatrick went to Terry's Food Mart at 5500 Hemphill in Fort Worth.  Patrick went to the counter to speak with the store clerk, Syed Karim, while Brenda grabbed some beer and Pepsi.  While Patrick spoke to Syed, a black male walked in and went to the back of the store.  A few minutes later, two more black men dressed in black pants and sweatshirts with hoodies came in and said, "This is a robbery, fools."  One of the men wore a mask and had a gun.  Syed took out the cash register, set it on the counter, and begged for his life.

Patrick and Brenda, who had backtracked down one of the aisles away from the counter and crouched on the floor, called 9-1-1 when they heard a shot fired.  The men left in a black four-door car.  Patrick ran to the front,

2

noticed that the men were gone, and saw Syed holding his stomach before he fell to the floor. Patrick ran to the Shell station next door where he knew an ambulance was parked, but the EMTs refused to help until the police cleared the scene. Syed later died from his wounds at the hospital.

Based on the information the Kilpatricks provided, the police believed that only two men were involved in the robbery. However, after viewing the store surveillance video, police realized a third man had been involved. On April 15, 2005, police received a crime stoppers tip from Maricia Holland. Holland had overheard a conversation between her girlfriend Shawntee Abbs and appellant in which appellant told Abbs that he had committed a robbery and had some money. A couple of days later, Holland, Abbs, and appellant were at Abbs's house, and appellant again admitted that he was involved with the robbery and showed them a "wad" of cash. Appellant also talked about the robbery on another occasion at Abbs's house and said that he "got them [his friends] pumped up" and one of them "got trigger happy."

Amanda Bivens testified that she had met appellant two years ago when he was selling drugs. Bivens had a black, four-door 1998 Oldsmobile Cutlass, which she would rent to appellant in exchange for drugs. On April 13, 2005, Bivens was with appellant in her car when he began talking about needing money to purchase drugs to sell; appellant said he was going to rob a clerk at

3

a convenience store. Appellant, who was driving, stopped at a house and picked up his friends T.T. and Julian. Bivens waited in the car for about fifteen minutes until appellant, T.T., and Julian came out wearing black sweatshirts. Appellant threw a gun in her lap and told her to hold it, but Bivens handed the gun to T.T. and Julian in the back seat. Appellant drove around and tried to find another gun, but he could not locate one. Appellant then dropped Bivens off at a house on Savage Street where she waited for about thirty minutes until appellant, T.T., and Julian returned. Appellant told Bivens to "[g]et that cash register out your car" and gave her ten dollars for the use of her car. Bivens also saw a black sweatshirt and black ski mask in the back seat of her car. Appellant, T.T., and Julian left in another car.

Bivens saw the robbery on the news the next morning and, although she knew appellant and his friends were going to commit a crime the night before, she did not know that they had shot someone until she saw the story. When Bivens later saw appellant, she asked him what had happened, but he was evasive. Appellant changed his story a couple of times; for example, one time he told her that he had gone into the store but also that he had waited in the car.

Several days later, Bivens and Abbs were driving in Bivens's car when the police surrounded them. Bivens and Abbs accompanied the police to the

4

station and told them what they knew. After speaking with police, Bivens went with a detective to a pay phone at a Chevron station and called appellant to meet her. When appellant arrived, police arrested him.

A grand jury charged appellant as follows:

> Darrell Glenn Bell, hereinafter called Defendant, in the County of Tarrant and State aforesaid, on or about the 13th day of April 2005, did
>
> Then and there intentionally cause the death of an individual, Syed Karim, by shooting him with a firearm, and the said defendant was then and there in the course of committing or attempting to commit the offense of robbery.

A jury convicted appellant of the offense of capital murder, and the trial court assessed punishment at life imprisonment. Appellant timely filed this appeal.

### III. Legal and Factual Sufficiency

In points one and two, appellant argues that the evidence was legally and factually insufficient to support the jury's verdict. Specifically, appellant claims that he lacked specific intent to kill Syed.

### A. Standard of Review

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the prosecution in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443

5

U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

When reviewing the factual sufficiency of the evidence to support a conviction, we view all the evidence in a neutral light, favoring neither party. *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006); *Drichas v. State*, 175 S.W.3d 795, 799 (Tex. Crim. App. 2005). We then ask whether the evidence supporting the conviction, although legally sufficient, is nevertheless so weak that the fact-finder's determination is clearly wrong and manifestly unjust or whether conflicting evidence so greatly outweighs the evidence supporting the conviction that the fact-finder's determination is manifestly unjust. *Watson*, 204 S.W.3d at 414–15, 417; *Johnson v. State*, 23 S.W.3d 1, 11 (Tex. Crim. App. 2000). To reverse under the second ground, we must determine, with some objective basis in the record, that the great weight and preponderance of all the evidence, though legally sufficient, contradicts the verdict. *Watson*, 204 S.W.3d at 417.

In determining whether the evidence is factually insufficient to support a conviction that is nevertheless supported by legally sufficient evidence, it is not enough that this court "harbor a subjective level of reasonable doubt to overturn [the] conviction." *Id*. We cannot conclude that a conviction is clearly wrong or manifestly unjust simply because we would have decided differently

6

than the jury or because we disagree with the jury's resolution of a conflict in the evidence. *Id.* We may not simply substitute our judgment for the fact-finder's. *Johnson*, 23 S.W.3d at 12; *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997). Unless the record clearly reveals that a different result is appropriate, we must defer to the jury's determination of the weight to be given contradictory testimonial evidence because resolution of the conflict "often turns on an evaluation of credibility and demeanor, and those jurors were in attendance when the testimony was delivered." *Johnson*, 23 S.W.3d at 8. Thus, we must give due deference to the fact-finder's determinations, "particularly those determinations concerning the weight and credibility of the evidence." *Id*. at 9.

An opinion addressing factual sufficiency must include a discussion of the most important and relevant evidence that supports the appellant's complaint on appeal. *Sims v. State*, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003). Moreover, an opinion reversing and remanding on factual insufficiency grounds must detail all the evidence and clearly state why the finding in question is factually insufficient and under which ground. *Goodman v. State*, 66 S.W.3d 283, 287 (Tex. Crim. App. 2001); *Johnson*, 23 S.W.3d at 7.

7

**B.    Capital Murder and Law of the Parties**

A person commits capital murder if he intentionally or knowingly causes the death of an individual while in the course of committing or attempting to commit robbery.  TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(2) (Vernon 2003 and Vernon Supp. 2008); *Johnson v. State*, 853 S.W.2d 527, 535 (Tex. Crim. App. 1992), *cert denied*, 510 U.S. 852 (1993); *Frank v. State*, 183 S.W.3d 63, 72 (Tex. App.—Fort Worth 2005, pet. ref'd).  The law of parties applies to the offense of capital murder. *Johnson*, 853 S.W.2d at 534; *Frank*, 183 S.W.3d at 72.

Under the law of parties, "[a] person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both."  TEX. PENAL CODE ANN. § 7.01(a) (Vernon 2003); *Frank,* 183 S.W.3d at 72.   A person is "criminally responsible" for an offense committed by the conduct of another, if acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.  TEX. PENAL CODE ANN. § 7.02(a)(2); *Frank,* 183 S.W.3d at 72.   Evidence is sufficient to convict under the law of parties when the defendant is physically present at the commission of the offense and encourages its commission by words or other agreement.  *Ransom v. State,*

8

920 S.W.2d 288, 302 (Tex. Crim. App.) (op. on reh'g), *cert. denied,* 519 U.S. 1030 (1996); *Frank,* 183 S.W.3d at 72–73. In determining whether a defendant participated in an offense as a party, the fact finder may examine the events occurring before, during, and after the commission of the offense and may rely on actions of the defendant that show an understanding and common design to commit the offense. *Ransom,* 920 S.W.2d at 302; *Cordova v. State,* 698 S.W.2d 107, 111 (Tex. Crim. App. 1985), *cert. denied,* 476 U.S. 1101 (1986); *Frank,* 183 S.W.3d at 73.

Further, section 7.02(b) of the penal code provides that

> [i]f, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out the conspiracy.

TEX. PENAL CODE ANN. § 7.02(b); *Frank,* 183 S.W.3d at 73.

The law of parties need not be pled in the indictment. *Marable v. State,* 85 S.W.3d 287, 287 (Tex. Crim. App. 2002); *Montoya v. State,* 810 S.W.2d 160, 165 (Tex. Crim. App. 1989), *cert. denied,* 502 U.S. 961 (1991); *Frank,* 183 S.W.3d at 72. This rule applies to the law of parties found in both section 7.02(a)(2) and section 7.02(b). *Montoya,* 810 S.W.2d at 165.

**C.      Analysis**

Appellant argues that because he did not intend to kill anyone, the evidence is insufficient to find him guilty of capital murder.  However, because the jury charge authorized the jury to find appellant guilty of capital murder under either penal code section 7.02(a)(2) or 7.02(b), we need only consider whether the evidence is sufficient to prove that Syed's murder should have been anticipated as a result of carrying out the robbery.  *See Love v. State,* 199 S.W.3d 447, 453 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd).

Evidence that a defendant knew his co-conspirators might use guns during a robbery can be sufficient to demonstrate that the defendant should have anticipated the possibility of murder occurring during the course of the robbery.  *See id.; see also Fuller v. State,* 827 S.W.2d 919, 932 (Tex. Crim. App. 1992), *cert. denied*, 509 U.S. 922 (1993) (holding that murder should have been anticipated as a possible result of a robbery when, although appellant denied participating in any brutality against decedent, he admitted having a pocketknife with him at the time of entry and that one of his cohorts usually would have had a knife in that situation); *Green v. State,* 682 S.W.2d 271, 285–86 (Tex. Crim. App. 1984) (holding murder should have been anticipated as a possible result of robbery when appellant admitted entering the house armed with a gun), *cert. denied,* 470 U.S. 1034 (1985); *Smith v. State*, 187

10

S.W.3d 186, 190–92 (Tex. App.—Fort Worth 2006, pet. ref'd) (holding that there was sufficient evidence to support capital murder conviction under law of parties when appellant participated in a robbery but was not the shooter); *Longoria v. State*, 154 S.W.3d 747, 757 (Tex. App.—Houston [14 Dist.] 2004, pet. ref'd) (holding appellant's providing his cohort with gun for use in the robbery was sufficient to support the jury's conclusion that victim's death should have been anticipated as a result of the robbery).

Here, appellant asserts that none of the people involved in the robbery intended to kill anyone and that the shooter's conduct in firing the gun at Syed startled him. However, the evidence shows that appellant told Bivens that he needed money to buy drugs to sell and that he was going to commit a robbery. Appellant planned the robbery by enlisting the help of his friends T.T. and Julian, and he got them "all pumped up to go" to Terry's Market to get some money. Appellant also provided them with a gun and attempted to locate another gun. T.T. used the gun supplied by appellant to shoot Syed when he got "trigger happy."

Even assuming that appellant did not intend for the gun to be fired during the robbery, he should have anticipated that a murder was possible. The fact that appellant provided a firearm to his cohorts and tried to find a second gun indicates that he was aware of the dangerousness of the robbery. Based on the

11

evidence, the jury could have reasonably concluded that appellant anticipated, or should have anticipated, the possibility that T.T. could resort to shooting someone during the course of the robbery. *See Love,* 199 S.W.3d at 453.

Viewing all the evidence in the light most favorable to the jury's verdict, we conclude that a rational trier of fact could have found, beyond a reasonable doubt, that appellant should have reasonably anticipated the possibility of a murder occurring in the course of the robbery. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton*, 235 S.W.3d at 778. Furthermore, viewing the evidence neutrally, we conclude that the evidence is not so obviously weak that the jury's verdict seems "clearly wrong and manifestly unjust" or that proof of guilt is against the great weight and preponderance of the evidence. *See Watson*, 204 S.W.3d at 414–15, 417; *Johnson*, 23 S.W.3d at 11. Accordingly, we hold that the evidence is legally and factually sufficient to support appellant's conviction, and we overrule appellant's points one and two.

**IV. Law of Parties and the Indictment**

In his third through sixth points, appellant argues that the trial court erred by allowing the State to argue law of party liability to the jury when it was not pled in the indictment. Specifically, appellant claims the trial court erred by denying his motion to quash, by allowing the State to discuss the law of parties during voir dire, by denying his motion for judgment of acquittal at the close of

12

the State's evidence, and by including the law of parties in the jury charge. Appellant alleges that the State's failure to indict him as a party to the offense violated his Sixth Amendment and due process rights.

It is well settled that the law of parties need not be pled in the indictment. *Sorto v. State,* 173 S.W.3d 469, 476 (Tex. Crim. App. 2005), *cert. denied,* 548 U.S. 926 (2006); *Frank,* 183 S.W.3d at 73. Additionally, the law of parties found in section 7.02(b) has often been applied in capital murder cases. *See, e.g., Montoya,* 810 S.W.2d at 165; *Wood v. State,* 4 S.W.3d 85, 90 (Tex. App.—Fort Worth 1999, pet. ref'd).

Here, the State was not required to plead the law of parties in the indictment and was not precluded from discussing the theory during voir dire. *See Sorto,* 173 S.W.3d at 476; *Frank,* 183 S.W.3d at 73. Further, the trial court did not err by including the law of parties in the jury charge. *See Sorto,* 173 S.W.3d at 476; *Frank,* 183 S.W.3d at 73. Therefore, we overrule appellant's third, fourth, fifth, and sixth points.

## V. Lesser Included Offenses

In appellant's seventh point, he argues that the trial court erred by denying his request to include the lesser included offenses of conspiracy to commit capital murder and conspiracy to commit aggravated robbery in the jury charge.

## A.    Jury Charge

The trial court is obligated to charge the jury on the law applicable to the case, not expressing any opinion as to the weight of the evidence.  TEX. CODE CRIM. PROC. ANN. art. 36.14 (Vernon 2007).  Before the charge is read to the jury, the defendant is entitled to a reasonable time to examine the charge and present any objections in writing.  *Id.*  In addition, both parties are entitled to a reasonable time to present written instructions to be included in the charge.  *Id.* art. 36.15 (Vernon 2006).

## B.    Lesser Included Offense Instructions

We use a two-step analysis to determine whether an appellant was entitled to a lesser included offense instruction.  *Hall v. State*, 225 S.W.3d 524, 528 (Tex. Crim. App. 2007); *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex. Crim. App.), *cert. denied*, 510 U.S. 919 (1993).  First, the lesser offense must come within article 37.09 of the code of criminal procedure.  TEX. CODE CRIM. PROC. ANN. art. 37.09 (Vernon 2006); *Moore v. State,* 969 S.W.2d 4, 8 (Tex. Crim. App. 1998).  "An offense is a lesser included offense if . . . it is established by proof of the same or less than all the facts required to establish the commission of the offense charged."  TEX. CODE CRIM. PROC. ANN. art. 37.09(1); *see also Hall*, 225 S.W.3d at 536.  This inquiry is a question of law.  *Hall*, 225 S.W.3d at 535.  It does not depend on the evidence to be

14

produced at the trial but is performed by comparing the elements of the offense as they are alleged in the indictment or information with the elements of the potential lesser included offense. *Id.* at 525, 535–36.

Second, some evidence must exist in the record that would permit a jury to rationally find that if the appellant is guilty, he is guilty only of the lesser offense. *Hall*, 225 S.W.3d at 536; *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau*, 855 S.W.2d at 672–73. The evidence must be evaluated in the context of the entire record. *Moore*, 969 S.W.2d at 8. There must be some evidence from which a rational jury could acquit the appellant of the greater offense while convicting him of the lesser included offense. *Id.* The court may not consider whether the evidence is credible, controverted, or in conflict with other evidence. *Id.* Anything more than a scintilla of evidence may be sufficient to entitle a defendant to a lesser charge. *Hall*, 225 S.W.3d at 536.

## C. Conspiracy to Commit Aggravated Robbery

Neither appellant nor the State requested an instruction on the lesser included offense of conspiracy to commit aggravated robbery; thus, the trial court did not err by failing to submit an instruction. The trial court need not submit a lesser included instruction sua sponte if neither side requests one. *See Delgado v. State*, 235 S.W.3d 244, 249–50 (Tex. Crim. App. 2007).

15

Moreover, the defense may not claim error successfully on appeal due to the omission of a lesser included offense if the defense did not request one. *Id.* at 250.

**D.      Conspiracy to Commit Capital Murder**

Appellant did ask for an instruction on conspiracy to commit capital murder, so we will review his point with respect to that omitted instruction.

**1.      Applicable Law**

A person commits criminal conspiracy if, with intent that a felony be committed, (1) he agrees with one or more people that they or one or more of them will engage in conduct that would constitute the offense and (2) he or one or more of them performs an overt act in pursuance of the agreement. TEX. PENAL CODE ANN. § 15.02(a) (Vernon 2003).

A person is criminally responsible for an offense committed by the conduct of another if

> in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

*Id.* at § 7.02(b).

16

## 2.    Analysis

Appellant argues that he should have received an instruction on the lesser included offense of conspiracy to commit capital murder. Appellant requested the following jury instruction:

> A person commits criminal conspiracy if, with intent that a felony be committed, he agrees with one or more persons that they, or one of them, engage in conduct that would constitute the offense, and he, or one or more of them, performs an overt act in pursuance of the agreement.
>
> An agreement constituting a conspiracy may be inferred from acts of the parties.
>
> Now, if you find from the evidence beyond a reasonable doubt that on or about April 13, 2005 in Tarrant County, Texas, the Defendant, Darrell Glenn Bell, did then and there with intent that a felony, to wit: aggravated robbery, be committed, agree with Tarrence L. Stevenson and Julian Hayley that said Defendant and Tarrence L. Stevenson and Julian Hayley engage in conduct that would [constitute] said offense of aggravated robbery, to wit while in the course of committing theft of property, and with the intent to obtain and maintain control of said property, T[a]rrance L. Stevenson intentionally caused bodily injury, serious bodily injury or the death of Syed Karim by shooting him with a firearm and that the Defendant did then and there, if he did, commit an act or acts in furtherance of said conspiracy by driving an automobile, providing assisting in the surveillance of the store prior to or during the robbery and the persons therein, obtaining property from the store and sharing in and distributing the proceeds from the conspiracy, if he did any of these said acts, then you will find the Defendant guilty of the lesser included offense of conspiracy to commit capital murder.
>
> Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant of the

17

lesser included offense of conspiracy to commit capital murder and next consider whether he is guilty, if at all, of the lesser included offense of aggravated robbery.

Appellant's proposed instruction states that the jury should find him guilty of the lesser included offense of conspiracy to commit capital murder if it found that appellant and his cohorts agreed that Stevenson would intentionally cause bodily injury or serious bodily injury to Syed or Syed's death during the course of committing the aggravated robbery. The intent to commit murder is a required element of party liability for capital murder under section 7.02(a); however, under section 7.02(b), under which appellant was also charged, "all conspirators are guilty of the felony actually committed, though *having no intent to commit it.*" *See* TEX. PENAL CODE ANN. §§ 19.03(a)(2), 7.02(b) (emphasis added). Thus, appellant's proposed conspiracy to commit capital murder charge, which requires proof that appellant intended for Stevenson to kill Syed, is not a lesser included offense of capital murder under the State's 7.02(b) theory of this case, which specifically excluded the need for any intent.

Moreover, here there is no evidence permitting a rational jury to find that appellant and both his friends intended for Stevenson to kill Syed as part of the conspiracy. Accordingly, there is no evidence that if appellant is guilty, he is guilty only of conspiracy to commit capital murder. *See Hall*, 225 S.W.3d at 536; *Salinas*, 163 S.W.3d at 741; *Rousseau*, 855 S.W.2d at 672–73. Thus,

18

we hold that the trial court did not err by refusing to include an instruction on the lesser included offense of conspiracy to commit capital murder, and we overrule appellant's seventh point.

## VI. Benefit of the Doubt

In his eighth point, appellant argues that the trial court erred by denying appellant's request for a "benefit of the doubt" instruction regarding lesser included offenses in the jury charge.

### A. Applicable Law

As a general rule, if evidence in a case leaves a reasonable doubt as to the grade or degree of the offense, upon a request by the defendant, the trial court must give the jury a "benefit of the doubt" instruction. *Benavides v. State,* 763 S.W.2d 587, 589 (Tex. App.—Corpus Christi 1988, pet. ref'd); *Shelby v. State,* 724 S.W.2d 138, 139 (Tex. App.—Dallas 1987) (op. on reh'g), *vacated on other grounds*, 761 S.W.2d 5 (Tex. Crim. App. 1988); *see also Mathis v. State,* No. 02-06-00355-CR, 2007 WL 2963718, at *4 (Tex. App.—Fort Worth Oct. 11, 2007, pet. ref'd) (mem. op., not designated for publication). A "benefit of the doubt" instruction is required even when the charge includes a proper instruction on reasonable doubt as applied to the whole case. *Shelby,* 724 S.W.2d at 139. This additional instruction clears up confusion when the jury has no reasonable doubt that the defendant committed

19

an offense, but is uncertain concerning the grade or degree of that offense. *Benavides,* 763 S.W.2d at 589. A court's refusal to include a "benefit of the doubt" instruction is not harmful to the defendant, however, if the charge as a whole leaves no uncertainty as to how to resolve any doubt. *Id.*; *Shelby,* 724 S.W.2d at 140.

**B.    Analysis**

In this case, appellant asked for the following to be added to the jury charge:

> If you should find from the evidence beyond a reasonable doubt that the defendant, Darrell Glenn Bell, is either guilty of capital murder, or aggravated robbery, but you have a reasonable doubt as to which offense he is guilty, then you should resolve that doubt in the Defendant's favor, and in such event, you will find the Defendant guilty of the lesser offense of aggravated robbery.

> If you find from the evidence that the Defendant is not guilty of capital murder, or aggravated robbery, or if you have a reasonable doubt thereof, you will acquit the Defendant and say by your verdict "Not Guilty."

The trial court denied appellant's request. However, the trial court gave the jury the following instruction:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 13th day of April, 2005, in Tarrant County, Texas, Tarrence L. Stevenson, did then and there intentionally cause the death of an individual, Syed Karim, by shooting him with a firearm, and the said Tarrence L. Stevenson was then and there in the course of committing of attempting to commit the offense of Robbery of Syed Karim, and if you further

20

believe from the evidence beyond a reasonable doubt that on said date in said County and State, the Defendant, Darrell Glenn Bell, as a party as that term in hereinbefore defined with the intent that the Capital Murder be committed, aided or attempted to aid the said Tarrence L. Stevenson in the foregoing action, by providing an automobile, driving an automobile, providing a firearm, assisting in the surveillance of the store prior to or during the Robbery and the persons therein, obtaining property from the store and sharing in and distributing the proceeds from the conspiracy, if he did; or if you believe from the evidence beyond a reasonable doubt that the Defendant, Darrell Glenn Bell, entered into a conspiracy with Tarrence L. Stevenson and Julian L. Hayley to commit the felony offense of Robbery and that on the 13th day of April, 2005, in the County of Tarrant and State of Texas, in the attempt to carry out this agreement, if any, Tarrence L. Stevenson did then and there intentionally shoot and kill Syed Karim, if he did, and that such offense was committed in furtherance of the unlawful purpose to commit Robbery and was an offense that should have been anticipated as a result of the carrying out of the agreement, then you will find the Defendant, Darrell Glenn Bell, guilty of Capital Murder, though he may have had no intent to commit it, and so say by your verdict, but if you do not so believe, or if you have a reasonable doubt thereof, you will acquit the Defendant of Capital Murder and next consider whether or not the Defendant is guilty of the lesser included offense of Aggravated Robbery.

Now, therefore, if you find from the evidence beyond a reasonable doubt that Tarrence L. Stevenson on or about the 13th day of April , 2005, in Tarrant County, Texas did then and there intentionally or knowingly cause bodily injury to Syed Karim by shooting him with a deadly weapon, to wit: a firearm, while then and there in the course of committing or attempting to commit the offense of Aggravated Robbery of Syed Karim, and that the Defendant, Darrell Glenn Bell, acting with the intent that the Aggravated Robbery be committed, aided or attempted to aid the said Tarrence L. Stevenson in the foregoing action by providing an automobile, driving an automobile, providing a firearm, assisting in the surveillance of the store prior to or during the Robbery and the persons therein, obtaining property from the store and sharing in

21

and distributing the proceeds from the conspiracy, if he did; then you will find the Defendant guilty of the lesser included offense of Aggravated Robbery.

Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will acquit the Defendant of the lesser included offense of Aggravated Robbery and say by your verdict "not guilty."

Accordingly, the application paragraphs of the court's charge first asked the jury to consider whether it found beyond a reasonable doubt that appellant was guilty of the offense of capital murder. *See Benavides,* 763 S.W.2d at 589; *see also Mathis,* 2007 WL 2963718, at *5. Next, the application paragraph instructed the jury that if it did not so find, it should acquit appellant of capital murder and then consider whether he was guilty of aggravated robbery. *See Benavides,* 763 S.W.2d at 589; *see also Mathis,* 2007 WL 2963718, at *5. It further instructed that if the jury did not find appellant guilty of aggravated robbery beyond a reasonable doubt, it should acquit appellant of that offense as well. *See Benavides,* 763 S.W.2d at 589; *see also Mathis,* 2007 WL 2963718, at *5.

The charge in this case clearly instructed the jury that it should acquit appellant of the greater offense, i.e., capital murder, if it was not convinced beyond a reasonable doubt of his guilt. *See Benavides,* 763 S.W.2d at 589; *see also Mathis,* 2007 WL 2963718, at *5. Furthermore, it also instructed the

22

jury that if it had a reasonable doubt about appellant's guilt concerning the lesser included offense, aggravated robbery, it should acquit appellant of the lesser included offense as well. *See Benavides,* 763 S.W.2d at 589; *see also Mathis,* 2007 WL 2963718, at *5. Thus, no additional "benefit of the doubt" instruction was necessary. *See Benavides,* 763 S.W.2d at 589; *Shelby,* 724 S.W.2d at 140; *see also Mathis,* 2007 WL 2963718, at *5. We hold that the trial court did not err by refusing the instruction, and we overrule appellant's eighth point.

### VII. Accomplice Witness Testimony

In his ninth point, appellant argues that the trial court erred by denying his request that it instruct the jury that Amanda Bivens was an accomplice witness. Specifically, appellant argues that Bivens was an accomplice because she knew that appellant and his friends were going to rob someone, she provided the car they drove, she passed the gun to the person who shot Syed, and she received proceeds from the robbery.

### A. Applicable Law

The accomplice witness rule mandates that "[a] conviction cannot be had upon the testimony of an accomplice unless corroborated by other evidence tending to connect the defendant with the offense committed." TEX. CODE CRIM. PROC. ANN. art. 38.14 (Vernon 2005); *Druery v. State,* 225 S.W.3d 491,

23

498 (Tex. Crim. App. 2007), *cert. denied,* 128 S. Ct. 627 (2007); *Barnes v. State,* 56 S.W.3d 221, 229 (Tex. App.—Fort Worth 2001, pet. ref'd). An accomplice witness is one who participates with a defendant before, during, or after commission of the offense, including engaging in actions that show an understanding and common design to do a certain act. *Druery*, 225 S.W.3d at 498; *Barnes,* 56 S.W.3d at 229. To be considered an accomplice witness, the witness's participation with the defendant must have involved some affirmative act that promotes the commission of the offense with which the defendant is charged. *Druery*, 225 S.W.3d at 498; *Barnes,* 56 S.W.3d at 229–30. A witness is not deemed an accomplice because she knew of the crime but failed to disclose or conceal it. *Druery*, 225 S.W.3d at 498. In addition, the witness's mere presence at the scene of the crime does not render that witness an accomplice witness. *Id.*; *Barnes,* 56 S.W.3d at 230. And complicity with an accused in the commission of another offense apart from the charged offense does not make that witness's testimony that of an accomplice witness. *Druery*, 225 S.W.3d at 498. In short, if the witness cannot be prosecuted for the offense with which the defendant is charged, or a lesser included offense of that charge, the witness is not an accomplice witness as a matter of law. *Id*.

The defendant is entitled to an accomplice witness instruction only if there is sufficient evidence in the record of the witness's participation in the crime to support a charge against the witness for the offense with which the accused is charged or a lesser included offense. *Barnes,* 56 S.W.3d at 230. A witness may be an accomplice either as a matter of law or as a matter of fact; the evidence in a case determines what jury instruction, if any, needs to be given. *Cocke v. State,* 201 S.W.3d 744, 747 (Tex. Crim. App. 2006), *cert. denied,* 127 S. Ct. 1832 (2007).

Unless the evidence clearly shows that the witness is an accomplice as a matter of law, i.e., the witness has been, or could have been, indicted for the same offense, a question about whether a particular witness is an accomplice is properly left to the jury with an instruction defining the term "accomplice." *Druery*, 225 S.W.3d at 498–99; *Cocke,* 201 S.W.3d at 748–49. If a witness is an accomplice as a matter of law, the trial court is required to provide an accomplice witness instruction to the jury. *Cocke,* 201 S.W.3d at 749. A trial judge, therefore, has no duty to instruct the jury that a witness is an accomplice witness as a matter of law unless there exists no doubt that the witness is an accomplice. *Druery*, 225 S.W.3d at 498.

If, however, the parties present conflicting or unclear evidence as to whether a witness is an accomplice, the jury must first determine whether the

25

witness is an accomplice as a matter of fact. *Cocke,* 201 S.W.3d at 748. Further, the trial court is not required to give the jury an accomplice witness instruction when the evidence is clear that the witness is neither an accomplice as a matter of law nor as a matter of fact. *Id*.

The purpose of the instruction, therefore, is not to cast suspicion on the testimony provided by the accomplice or to encourage jurors to give it less weight than other testimony. *Id.* at 747. Rather, the instruction merely reminds the jury that it cannot use the accomplice's testimony to convict the defendant unless there also exists some nonaccomplice testimony tying the defendant to the offense. *Id*.

**B. Analysis**

Appellant requested an instruction that Bivens was an accomplice as a matter of law and as a matter of fact. The trial court included only an accomplice as a matter of fact instruction in the jury charge.

Here, the evidence showed that Bivens and appellant were in Bivens's car when appellant told her that he needed money to purchase drugs to sell and that he was going to "run up in a store." Appellant drove to a house to find his friends, and Bivens waited in the car while appellant went inside. When appellant returned, he threw a gun in her lap and told her to hold it, but appellant testified that she was not comfortable with guns because her father

26

committed suicide, so she passed it to one of appellant's friends sitting in the back seat. Appellant did not produce any evidence that Bivens assisted in finding or producing a gun.

Appellant argues that there is evidence that Bivens drove the getaway car; however, Bivens testified that appellant dropped her off at a friend's house and that she was not present at Terry's Food Mart when the robbery took place.[2] Additionally, the State believed appellant's girlfriend drove the getaway car and not Bivens. In fact, Detective Jose Hernandez testified that there was no credible evidence that Bivens took part in the crime.

Based on these facts, we conclude that Bivens was not an accomplice as a matter of law because there is no evidence that she took any affirmative action to assist or promote the commission of the offense of capital murder. *See Barnes,* 56 S.W.3d at 230. She did not help appellant or his accomplices plan the offense, she did not aid them by obtaining weapons or disguises, she was not present during the commission of the offense, and she did not participate in the commission of the offense. *See id*. Even though Bivens allowed appellant to use her car in exchange for ten or twenty dollars and she

---

[2] Appellant made the allegation that Bivens drove the getaway car before Bivens testified, but he never provided any evidence to support that assertion.

knew that appellant was about to commit a crime, she did not have any details of the crime, nor did she accompany appellant and his friends. At most, the evidence shows that Bivens knew appellant wanted to rob someone, that she allowed him to use her car, which she had previously agreed to in the past in exchange for drugs, that she received a small amount of cash after the robbery, and that she concealed her knowledge by not immediately reporting the crime to law enforcement officials. *See Druery,* 225 S.W.3d at 498. Under these facts, it is not clear that Bivens could have been prosecuted for capital murder or one of the lesser included offenses. *See Cocke,* 201 S.W.3d at 749; *Barnes,* 56 S.W.3d at 230. Thus, the trial court properly refused appellant's requested accomplice witness instructions as a matter of law, and we overrule appellant's ninth point.

## VIII. Independent Impulse

In his tenth point, appellant contends that the trial court erred by denying his request for an "independent impulse" instruction in the jury charge.

### A.    Applicable Law

The Texas Court of Criminal Appeals has held that defendants are not entitled to instructions on defensive theories not enumerated in the Texas Penal Code, including a defensive charge on independent impulse. *Walters v. State,* 247 S.W.3d 204, 210 (Tex. Crim. App. 2007); *Solomon v. State,* 49 S.W.3d

28

356, 368 (Tex. Crim. App. 2001); *Schiffert v. State*, 257 S.W.3d 6, 21 (Tex. App.—Fort Worth 2008, pet. dism'd), untimely filed; *Severs v. State,* 87 S.W.3d 752, 756 (Tex. App.—Texarkana 2002, no pet.). An instruction on independent impulse is merely a negation of elements in the State's case; therefore its inclusion would be superfluous and, in fact, would be an impermissible comment on the weight of the evidence. *See Solomon,* 49 S.W.3d at 368; *Severs,* 87 S.W.3d at 756.

## B. Analysis

Here, the trial court gave instructions tracking the statutory language of penal code 7.02(b).[3] Appellant argues that these instructions were not enough to cover the independent impulse issue and contends that the trial court should have submitted the following instruction:

> If you find from the evidence that the defendant, Darrell Glenn Bell, left the scene of the offense, if any, prior to the shooting, if any, or if you have a reasonable doubt thereof, then you will acquit the defendant of capital murder and next consider whether he is guilty of the offense of aggravated robbery.

Appellant's proposed defensive issue would simply negate the conspiracy liability element of the State's case and is inconsistent with current Texas law; all that is required is for the appropriate portions of the jury charge to track the

---

[3] See Section VI for the jury charge.

29

language of section 7.02(b). *See Solomon,* 49 S.W.3d at 368. Because the jury charge tracked the language of section 7.02(b) and because the defense of independent impulse is not found in the penal code, we hold that the trial court did not err by refusing to include the instruction and overrule appellant's tenth point.

## IX. Prosecutor's Allegedly Improper Comments on Appellant's Failure to Testify

In his eleventh point, appellant argues that the trial court erred by overruling his objections to the prosecutor's comments regarding his silence.

### A. Applicable Law

To be permissible, the State's jury argument must fall within one of the following four general areas: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; or (4) plea for law enforcement. *Felder v. State*, 848 S.W.2d 85, 94–95 (Tex. Crim. App. 1992), *cert. denied*, 510 U.S. 829 (1993); *Alejandro v. State*, 493 S.W.2d 230, 231 (Tex. Crim. App. 1973).

It is well-settled law that the State is entitled to comment on an accused's failure to produce testimony from sources other than himself when it is relevant to a disputed issue. *Patrick v. State,* 906 S.W.2d 481, 490 (Tex. Crim. App. 1995), *cert. denied,* 517 U.S. 1106 (1996); *Harris v. State,* 122

S.W.3d 871, 884 (Tex. App.—Fort Worth 2003, pets. ref'd). Moreover, a prosecutor's comment about the subpoena power of a defendant is proper if it refers to the defendant's failure to produce evidence from other sources. *Livingston v. State,* 739 S.W.2d 311, 338 (Tex. Crim. App. 1987), *cert. denied,* 487 U.S. 1210 (1988); *Harris,* 122 S.W.3d at 884. Accordingly, a prosecutor's comment is improper only if it points to the absence of evidence that could be supplied only by the defendant's testimony. *Fuentas v. State,* 991 S.W.2d 267, 275 (Tex. Crim. App.), *cert. denied,* 528 U.S. 1026 (1999); *Harris,* 122 S.W.3d at 884.

**B.    Analysis**

During closing arguments in the guilt/innocence phase of the trial, the following exchange took place:

[State]:    These are the individuals that he decided he needed to go forth. Follow the money from everybody here, and, see, both sides, when they put on cases from both sides, and we talked about it in voir dire, they have an opportunity just to sit here. But once they open their mouth, they have the equal right to subpoena anybody they want. Did you ever hear anybody about his gainful employment?

[Defense]:  Your Honor, I'm going to object. That's a comment upon my client's failure to testify.

The Court:  That's overruled.

[State]:    Nobody came in to refute what's there.

[Defense]:   Your Honor, I am going to refute again to failure -to-testify comments.   And that's a direct —

The Court:   That's overruled.

[State]:   We're here today because Mr. Bell needed cash. We're here today because Mr. Bell decided to go to Terry's Food Mart and go in and kill Syed.  That's part of the game when you bring a gun to the party.

. . . Mo [appellant] made the decision that he needed money that week.  And this is the way to get it.  Not go get a job and not work hard like everybody else in the community does.

Here, the prosecutor argued that appellant did not present any evidence to refute the State's theory that he decided to commit robbery because he needed money.   After reviewing the prosecutor's comments in context, we conclude that the argument at issue refers to appellant's failure to call other witnesses or produce testimony from sources other than himself. *See Patrick*, 906 S.W.2d at 490; *Livingston,* 739 S.W.2d at 338; *Harris,* 122 S.W.3d at 884; *see also Wolfe v. State,* 917 S.W.2d 270, 279 (Tex. Crim. App. 1996) (holding that a prosecutor cannot comment on the lack of evidence presented when that comment necessarily refers to the defendant's failure to testify, but language that can reasonably be construed as a failure to present evidence other than the defendant's testimony is not a comment on the failure to testify). Thus, the trial court's overruling of appellant's objection was not an abuse of

32

discretion because the comment was not improper. *See Patrick,* 906 S.W.2d at 490; *Livingston,* 739 S.W.2d at 338; *Harris,* 122 S.W.3d at 884. We overrule appellant's eleventh point.

## X. Evidentiary Challenge

In his twelfth point, appellant asserts that the trial court abused its discretion in admitting State's Exhibit 44, a witness statement made by Shawntee Abbs, because the statement exceeded the matters inquired into, produced before the jury prejudicial hearsay, and contained extraneous offenses or acts of misconduct which were substantially more prejudicial than probative. The State responds that the statement was properly admitted under the rule of optional completeness because defense counsel opened the door during cross-examination.

### A.    Standard of Review and Applicable Law

We review a trial court's decision to admit evidence under an abuse of discretion standard. *Walters,* 247 S.W.3d at 217; *West v. State,* 121 S.W.3d 95, 100 (Tex. App.—Fort Worth 2003, pet. ref'd). The trial court abuses its discretion only when the decision lies "outside the zone of reasonable disagreement." *Walters,* 247 S.W.3d at 217; *West,* 121 S.W.3d at 100.

Hearsay statements are generally not admissible unless the statement falls within a recognized exception to the hearsay rule. *Walters,* 247 S.W.3d

33

at 217.  Rule 107, the rule of optional completeness, is one of these exceptions.  *Id*.  Rule 107 provides that

> [w]hen part of an act, declaration, conversation, writing or recorded statement is given in evidence by one party, the whole on the same subject may be inquired into by the other, and any other act, declaration, writing or recorded statement which is necessary to make it fully understood or to explain the same may also be given in evidence, as when a letter is read, all letters on the same subject between the same parties may be given.

TEX. R. EVID. 107.

This rule is one of admissibility and permits the introduction of otherwise inadmissible evidence when that evidence is necessary to fully and fairly explain a matter "opened up" by the adverse party.  *Walters,* 247 S.W.3d at 218; *West,* 121 S.W.3d at 103.  It is designed to reduce the possibility of the jury receiving a false impression from hearing only a part of some act, conversation, or writing, and it takes effect when other evidence has already been introduced but is incomplete or misleading.  *Walters,* 247 S.W.3d at 218; *West,* 121 S.W.3d at 103.  Once an evidentiary door has been opened by one side, this rule serves to allow the other side to complete the picture.  *West,* 121 S.W.3d at 103.  Rule 107 does not permit the introduction of other similar but inadmissible evidence unless it is necessary to explain properly admitted evidence.  *Walters,* 247 S.W.3d at 218.  Further, the rule is not invoked by the mere reference to a document, statement, or act.  *Id*.  And it is limited by Rule

34

403, which permits a trial judge to exclude otherwise relevant evidence if its unfair prejudicial effect or its likelihood of confusion of the issues substantially outweighs its probative value. *Id*.

**B.    Analysis**

We first observe that appellant did not object that the complained of evidence was substantially more prejudicial than probative; he objected only that the evidence was not admissible under the rule of optional completeness. Consequently, he failed to preserve his rule 403 complaint for appellate review. *See* TEX. R. APP. P. 33.1(a)(1) (requiring that to preserve a complaint for appellate review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion); *Mosley v. State,* 983 S.W.2d 249, 265 (Tex. Crim. App. 1998) (op. on reh'g), *cert. denied,* 526 U.S. 1070 (1999).

Abbs was allowed to use the statement she made to police to refresh her memory during the State's examination. *See* TEX. R. EVID. 612. During cross-examination, defense counsel also questioned Abbs regarding her previous statement. Defense counsel specifically asked Abbs about the handwritten portion of her statement, which read:

35

Boo n T-T were talking about how the[y] rob[b]ed the store and got the money.

T-T told me that he had shot at somebody or shot somebody when he said I bus[t]ed at that nigga.

However, defense counsel further asked Abbs as follows:

[Defense]: And do you know who shot the clerk. You know, don't you?

[Abbs]: Do I know what?

[Defense]: You know who shot the clerk, don't you?

[Abbs]: Um.

[Defense]: Come on.

[Abbs]: I heard – I heard different, you know . . . I done heard different stories.

[Defense]: Uh-huh.

[Abbs]: Yeah, but I done heard who shot him or whatever.

[Defense]: . . . [I]n your own handwriting didn't you say T.T. said, Do you remember when I busted that nigger, and that's when he told you he had shot somebody, T.T.?

[Abbs]: Yes.

[Defense]: Yeah. So is it a fair statement to say that T.T. said – and you don't know his real name, you know him as T.T. – let me get it right. I don't want to misquote you here. Right?

[Abbs]: Yeah.

36

[Defense]: Yeah. And that's your own handwriting, isn't it?

[Abbs]: Yes, sir.

Defense counsel then showed Abbs pictures of appellant, T.T., and Julian. When Abbs identified T.T., defense counsel stated,

This is T.T. that's the, I busted that nigger, I shot the clerk guy, right?

Abbs responded, "Uh-huh." Defense counsel also wrote "I busted that nigger, I shot the clerk" on a large piece of paper and displayed it for the jury. Later, on redirect examination, the State said:

[State]: Ms. Abbs, let's be accurate about this. See this statement that Mr. Jones put here in quotes, I busted that the [sic] nigger, I shot the clerk. Is that what you wrote on your statement? Are those the words that are written on your statement?

[Abbs]: No, its not like that.

[State]: Okay. Because that – because that's not what you said, is it?

[Abbs]: No, its not in here.

The State then offered Abbs's entire written statement into evidence under the rule of optional completeness, and the trial court admitted it but only for the limited purpose of assessing Abbs's credibility.

Appellant argues that it was improper to admit Abbs's statement because the document was used only to refresh Abbs's memory. However, because

37

defense counsel misquoted the handwritten portion of Abbs's statement and actually created a visual of the misquoted statement for the jury to view, the rule of optional completeness was properly invoked. *See* TEX. R. EVID. 107; *Walters,* 247 S.W.3d at 217–18; *West,* 121 S.W.3d at 103. The rest of Abbs's statement was properly offered into evidence under the rule of optional completeness to show that the words written by defense counsel were not included anywhere in the statement and that her statements were taken out of context. Thus, we hold that the trial court did not abuse its discretion by permitting the admission of Abbs's written statement because the decision was not outside the zone of reasonable disagreement. *See Walters,* 247 S.W.3d at 217; *West,* 121 S.W.3d at 100. We overrule appellant's twelfth point.

## XI. Conclusion

Having overruled appellant's twelve points, we affirm the trial court's judgment.

TERRIE LIVINGSTON
JUSTICE

PANEL: LIVINGSTON, DAUPHINOT, and MCCOY, JJ.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: August 29, 2008

38