Opinion issued July 30, 2010.



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-08-00657-CR

———————————

Litrey Demond Turner, Appellant

V.

The State of
Texas, Appellee



 



 

On Appeal from the 56th District Court

Galveston County, Texas



Trial Court Case No. 07CR0760

 



 

MEMORANDUM OPINION

          A
jury convicted appellant Litrey Demond Turner of capital murder, and the trial
court assessed punishment at life in prison without parole.  See
Tex. Penal Code Ann. §
19.02(b)(1) (Vernon 2003), § 19.03(a)(2) (Vernon Supp. 2009).  Turner was 15 years old at the time of the
charged offense, and he was tried as an adult. 
On appeal, Turner contends that the evidence is legally insufficient to
support his conviction for capital murder and that the trial court erred by
refusing to instruct the jury on the lesser-included offenses of aggravated
robbery and robbery.

          The
trial court erroneously denied Turner’s requested jury instruction on the
lesser-included offense of robbery. 
Robbery was a lesser-included offense of capital murder in this case,
and there was some evidence in the record that would permit a rational jury to
find that Turner was only guilty of robbery and not of capital murder.  We therefore reverse the conviction and remand
for a new trial.[1]

Background

          Turner
lived with his aunt, Donna Morris, at an apartment complex in Dickinson,
Texas.  He met another teenager, Andrew
Brown, who also lived at the apartment complex. 
On a Monday not long after the start of the school year, Kathy Porter, a
neighbor in the apartment complex, saw four or five African-American teenage
boys standing outside.  She testified
that a boy with dreadlocks was passing around a small black handgun, handing it
to another boy who was several inches taller. 
That afternoon, Turner and Brown went to a nearby convenience store
called “Storekeepers.”  Storekeepers was
owned by two sisters, Bich Lam and complainant Phoung Thi Lam, who worked the
night shift before closing the store around 11:00 p.m.

The store’s surveillance video from
earlier in the day showed Turner purchasing a drink or snack while Brown, who
had dreadlocks, danced in the aisle near the counter.  The black-and-white video showed Turner was
several inches taller than Brown.

According to Turner’s statement to
the police, he and Brown watched a movie at his house that night and later
walked back to Storekeepers shortly before 11:00 p.m.  Turner told the police that he did not know
Brown was armed at that time or that he intended to rob the convenience
store.  Turner did, however, state that
prior to that day he had seen Brown with a gun, which Brown hid behind some steps
at the apartment complex. 

Michael Davis testified that he saw
Brown and a friend standing by the convenience store’s dumpster at
approximately 9:30 p.m. that night. 
Brittany Moore and Trikeith Sanders testified that they saw Turner and
Brown outside the convenience store at approximately 10:00 p.m. and that
Brown asked if a car parked in front of the store was an unmarked police
car.  They both said that when Brown
asked the question, Turner was standing with him.

The store’s surveillance video
shows Phuong Thi Lam walking in front of the counter to lock up the store.  As she put the key in the lock, the door
opened from the outside, and she struggled to close the door but was pulled
outside.  She returned inside and again
struggled to close and lock the door. 
The surveillance video shows Lam falling to the floor.

Around 10:45 or 11:00 p.m., Moore
and Sanders were walking past the convenience store when Moore noticed the
light was on and Lam’s car was still outside. 
They both saw Lam lying by the door in a pool of blood.  Davis walked by and then called 9-1-1.  Sanders and Davis both testified that they
heard Brown’s voice calling Davis’s name from the vicinity of the dumpsters.

Police responded within minutes,
and Lam, who had been shot and was bleeding but still had a faint pulse, was transported
to an emergency room where she later died. 
The medical examiner testified at trial that Lam died as a result of a
gunshot wound, which caused her to bleed to death.  He said that if she had received prompt
medical attention, she may have survived the shooting.

Sgt. J. Jaekel, a patrol supervisor
with the City of Dickinson Police Department, responded to the 9-1-1 call.  Shortly after the incident, the police
received an anonymous tip that they should look for “a black male with
dreadlocks named Young Money who was from Louisiana.”  Brown’s nickname was “Young Money,” and he
was from Louisiana.  After speaking with
Davis, Moore, and Sanders, Sgt. Jaekel decided that investigators should go to
the nearby apartment complex to search for the suspect.  While Sgt. Jaekel was coordinating efforts,
Deputy J. Gillane of the Galveston County Sherriff’s Department went to the
apartment complex, where he saw two young men. 
Deputy Gillane watched them go into an apartment.  Almost immediately, he saw one of them leave
and go into a different apartment.  When
Sgt. Jaekel arrived, Deputy Gillane showed him which apartments the young men
had entered, and Sgt. Jaekel arrested Brown in the first apartment and Turner
in the second.  

Sheryl Mitchell, a neighbor and
friend of Turner and Brown, lived in the first apartment they entered.  She testified that the boys were at her
apartment earlier in the day and that Brown showed his gun to a female
acquaintance and talked to her about robbing someone.  Turner was present at that time.  Mitchell testified that Turner and Brown
returned to her apartment that night. 
Turner left after less than five minutes, but Brown stayed until the
police came to the door and arrested him. 

Detective J. Lopez obtained consent
to search Mitchell’s apartment, Brown’s parents’ apartment, and Morris’s
apartment.  These searches took place the
night of the shooting or early in the morning of the next day.  Sgt. T. Keele, with the City of Dickinson
Police Department, searched Morris’s apartment. 
In the back bedroom where Turner usually slept, Sgt. Keele found a black
purse that had a copy of Lam’s social security card inside.  He did not find a gun.  Detective Lopez and Sgt. Keele also found
some dark colored clothing that matched the description of what Turner wore
before he entered Morris’s apartment that night.  J. Rojas, a forensic chemist with the Texas
Department of Public Safety Crime Lab, testified that he tested the black pants
that were found in Turner’s room.  Rojas
found one particle on the pants that was consistent with or indicative of
gunshot residue, but he conceded on cross-examination that environmental
sources can produce similar particles.

City of Dickinson Police Detective
W. Price searched Mitchell’s apartment and found no evidence pertaining to the
charged offense.  He also searched
Brown’s parents’ apartment, where his colleague Sgt. Gottlob found a bullet in
one of the closets in Brown’s bedroom.  Sgt. Gottlob testified that he found a .38
caliber cartridge in the closet.  Detective
Price and Sgt. Gottlob both testified that they found two framed photographs
hanging on the wall: one showing Brown holding a handgun and marijuana and the
other showing Brown holding a shotgun, marijuana, and what appeared to be
cocaine.  They did not find a gun.  C. Story, a forensic scientist with the
Texas Department of Public Safety Crime Lab, analyzed the bullet recovered from
Lam and compared it to the cartridge found in Brown’s closet and the
photographs taken from his apartment. 
Story testified that the bullet that he tested could have been fired
from the handgun shown in the photograph with Brown.

The day after the police searched
her apartment, Morris found a black coin purse in a basket of hair accessories
in Turner’s bedroom.  At first she
thought the coin purse belonged to her daughters, but she discovered Lam’s
driver’s license inside and turned it over to Detective J. Cromie with the City
of Dickinson Police Department.  She also
found a ski mask or knit cap, a bandana, and a ball cap in Turner’s bedroom,
none of which, she said, belonged to Turner. 
Forensic DNA analysis showed Brown’s DNA on the knit cap.  Testing also found Turner’s DNA on the black
coin purse.  Turner’s defense counsel
suggested through cross-examination that his DNA was present on the coin purse
because it was found near his hairbrush. 
But J. Watson, who performed the DNA analysis for the Texas Department
of Public Safety Crime Lab, testified that it was unlikely that Turner’s DNA
got on the coin purse by a random transfer.

Morris also testified that the day
after Turner was arrested, Brown’s parents came to her apartment.  She said they searched around and went into
her daughters’ bedroom, ostensibly looking for the gun used in the
robbery.  After Brown’s parents left,
Turner’s sister, Saqouia Turner, who was staying with Morris, found a gun and a
cell phone in Morris’s daughter’s bedroom.

Saqouia testified that she found a
black gun and a cell phone in her cousins’ bedroom.  Believing that Brown’s parents were trying to
frame Turner, she hid the gun and the cell phone in a cardboard box, put the
box in a black garbage bag, and threw the bag behind the dumpsters at the
apartment complex.  She later helped
police search for the gun, reenacting what she did, but the gun was never
found.

After Turner’s arrest, Justice of
the Peace Kathleen McCumber advised him of his rights, and Detective Lopez
later questioned him about the incident. 
Turner repeatedly denied any involvement in the robbery and murder, and
he initially denied any knowledge about it. 
He repeatedly said, “I didn’t do it.” 
As Detective Lopez continued the interview, Turner told him that he
spent the evening watching a movie with Brown and that he went with Brown to
the convenience store that night.  Turner
told Detective Lopez: that he was going to the store with Brown to get chips,
cookies, and soda; that he did not know that Brown had a gun with him when they
went to the store; that the first time he saw Brown’s gun that day was when
Brown showed it to Lam during the robbery; and that he did not know Brown was
going to rob or shoot the clerk.  Turner
said that he stayed near the dumpster because he wanted to return home.  He said that as Lam was locking up the store,
he saw Brown point a gun at her, demand her purse, and then shoot her.  Turner said he ran home, took a bath, and
changed his clothes.  He also said that
he normally kept his ground-floor bedroom window open and that Brown climbed in
the window and stashed Lam’s purse in his room.

At trial, Turner presented no
evidence, instead resting on the presumption of his innocence.  The trial court denied his request for jury
instructions on the lesser-included offenses of robbery and aggravated robbery,
but the court included an instruction on the lesser-included offense of felony
murder.  The jury found him guilty of
capital murder.

Legal
Sufficiency OF THE EVIDENCE

          In
his fourth issue, Turner contends that the evidence was legally insufficient to
support his conviction because the State failed to prove that he was a primary
actor to the offense.[2]  Turner’s entire argument on this point is
based upon the premise that the jury charge did not authorize the jury to
convict him under the law of parties. 
Turner thus argues that the jury could have convicted him only on
sufficient proof that he was the primary actor.

          Contrary
to his arguments on appeal, the jury charge also authorized the jury to convict
Turner of capital murder or felony murder on a conspiracy theory, as contemplated
by Section 7.02(b) of the Penal Code.  As
discussed below, the evidence was sufficient to convict Turner of capital
murder under this theory of responsibility.

A.   Standard of Review

We review the legal sufficiency of
the evidence by viewing the evidence in the light most favorable to the verdict
to determine whether any rational trier of fact could have found the essential
elements of the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Vodochodsky v. State, 158 S.W.3d 502,
509 (Tex. Crim. App. 2005).  The standard
is the same for both direct and circumstantial evidence cases.  King v.
State, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995).  The trier of fact is the sole judge of the
weight and credibility of the evidence.  Margraves v. State, 34 S.W.3d 912, 919
(Tex. Crim. App. 2000), overruled on
other groundsby Laster v. State, 275 S.W.3d 512 (Tex. Crim. App. 2009).  We do not resolve any conflict of fact, weigh
any evidence, or evaluate the credibility of any witnesses, as this was the
function of the trier of fact.  See Dewberry v. State, 4 S.W.3d 735, 740
(Tex. Crim. App. 1999).  We must resolve
any inconsistencies in the evidence in favor of the verdict.  Curry
v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).  

We measure the sufficiency of the
evidence against the elements of the offense as defined by a hypothetically
correct jury charge.  Malik v. State, 953 S.W.2d 234, 240
(Tex. Crim. App. 1997).  A hypothetically
correct jury charge “sets out the law, is authorized by the [charging
instrument], does not unnecessarily increase the State’s burden of proof or
unnecessarily restrict the State’s theories of liability, and adequately
describes the particular offense for which the defendant was tried.”  Id.  This standard ensures that a judgment of
acquittal is reserved for those situations in which there is an actual failure
in the State’s proof of the crime.  Id.  

Under the law of parties, if Turner
conspired with Brown to rob the store,[3] Turner could be held
criminally liable for capital murder committed by Brown,[4] even if Turner had no
intent to commit capital murder, if Brown committed the murder in an attempt to
carry out the conspiracy to commit robbery and if Brown’s actions should have
been anticipated by Turner as a result of the carrying out of the conspiracy.[5]  Thus the jury did not have to find that
Turner personally caused Lam’s death to convict him of capital murder.

B.   Analysis

          In
his statement to the police, Turner said that while he stood by a nearby
dumpster, Brown shot Lam.  Turner also
said that Brown later stored the purse and the other items stolen from Lam in
Turner’s room.  Evidence that Turner and
Brown conspired to commit an armed robbery at the convenience store includes:
(1) the surveillance video that showed they were in the store earlier in
the day; (2) testimony from Kathy Porter that she saw an African-American
teenage boy with dreadlocks passing around a small black handgun, handing it to
another boy who was several inches taller; (3) testimony from Sheryl
Mitchell that, in Turner’s presence, Brown showed his gun to a female
acquaintance and talked to her about robbing someone; and (4) testimony
from Brittany Moore and Trikeith Sanders that they saw Turner and Brown outside
the convenience store at approximately 10:00 p.m. and that Brown asked if a car
parked in front of the store was an unmarked police car.  Furthermore, Turner told Detective Lopez that
he knew that Brown owned a gun because Turner had seen the gun before the day
of the offense.  From this evidence a
jury could have reasonably inferred that Turner and Brown were co-conspirators,
that they planned to rob the Storekeepers convenience store at closing time,
and that Turner should have anticipated that Brown would shoot Lam with his
gun.

          Turner
argues that because the jury charge erroneously failed to apply the law of
parties, the evidence was legally insufficient to support the jury’s
verdict.  In so doing, Turner relies on
authority that has been overruled. 
Appellate courts review the sufficiency of the evidence based on a
hypothetically correct jury charge, not the charge actually given.  See
Malik, 953 S.W.2d at 240.  To the
extent Turner complains about the phrasing of the law of parties instructions
given to the jury, that is not pertinent to our legal sufficiency review.  See id.

We conclude that a rational jury
could have found beyond a reasonable doubt that Turner was guilty of capital
murder as party to the offense.  See Jackson, 443 U.S. at 319, 99 S. Ct.
at 2789; Vodochodsky, 158 S.W.3d at
509.  We hold that the evidence was
legally sufficient to support the conviction, and we overrule Turner’s fourth
issue.

LeSSER-INCLUDED
OFFENSES

          In his second issue, Turner contends that the trial
court erred by not charging the jury on the lesser-included offenses of robbery
and aggravated robbery.  Turner requested
that the jury be instructed on these offenses, and his request was sufficient
to preserve error.  Carmen v. State, 276 S.W.3d 538, 541 (Tex. App.—Houston [1st Dist.]
2008, pet. ref’d).  Turner argues on
appeal that the requested lesser-included offenses had to be included in the
instructions to the jury because the jury could have concluded that there was
not sufficient evidence to establish that he should have reasonably anticipated
a murder committed in furtherance of a conspiracy to commit robbery or
aggravated robbery.

A.   Law of Lesser-Included Offenses

To determine whether a defendant is
entitled to an instruction on a lesser-included offense, the court conducts a
two-pronged test.  See Hall v. State, 225 S.W.3d 524, 535–36 (Tex. Crim. App. 2007).  As recently reiterated by the Court of
Criminal Appeals in Ex parte Watson,[6] the first part of the test
requires the court to use the “cognate pleadings” approach to determine whether
an offense is a lesser-included offense of another offense.  The first prong is satisfied if the
indictment for the greater-inclusive offense either:

1) alleges all of the elements of the
lesser-included offense, or 2) alleges elements plus facts (including
descriptive averments, such as non-statutory manner and means, that are alleged
for purposes of providing notice) from which all of the elements of the
lesser-included offense may be deduced. 
Both statutory elements and any descriptive averments alleged in the
indictment for the greater-inclusive offense should be compared to the
statutory elements of the lesser offense. 
If a descriptive averment in the indictment for the greater offense is
identical to an element of the lesser offense, or if an element of the lesser
offense may be deduced from a descriptive averment in the indictment for the
greater-inclusive offense, this should be factored into the
lesser-included-offense analysis in asking whether all of the elements of the
lesser offense are contained within the allegations of the greater offense.

Watson, 306
S.W.3d 259, 273 (footnote omitted).  This
inquiry is a question of law.  Hall, 225 S.W.3d at 535.

The second step asks whether there
is evidence that supports giving the lesser-included-offense instruction to the
jury.  Id. at 536.  A defendant is
entitled to a requested instruction on a lesser-included offense when the proof
for the charged offense subsumes the proof required to establish the
lesser-included offense and some evidence in the record would permit a rational
jury to find that if the defendant is guilty, he is guilty only of the
lesser-included offense.  Id.

B.   Jury Charge Analysis

The State does not dispute that, in
this case, robbery and aggravated robbery are lesser-included offenses of
capital murder.  See Tex. Penal Code Ann.
§ 19.03 (Vernon Supp. 2009), §§ 29.02, 29.03(a)(1), (2) (Vernon 2003).  The first prong of the Hall analysis is satisfied.  

The second prong is also met.  “In applying this prong of the test, the
appellate court must examine the entire record instead of plucking certain
evidence from the record and examining it in a vacuum.”  Enriquez
v. State, 21 S.W.3d 277, 278 (Tex. Crim. App. 2000).  Anything more than a scintilla of evidence
may be sufficient to entitle a defendant to a jury instruction on a
lesser-included offense.  Hall, 225 S.W.3d at 536 (citing Bignall v. State, 887 S.W.2d 21, 23
(Tex. Crim. App. 1994)).  “It is not
enough that the jury may disbelieve crucial evidence pertaining to the greater
offense.  Rather, there must be some
evidence directly germane to a lesser-included offense for the factfinder to
consider before an instruction on a lesser-included offense is warranted.”  Skinner
v. State, 956 S.W.2d 532, 543 (Tex. Crim. App. 1997) (citing Bignall, 887 S.W.2d at 24).  “We are required to ‘view the evidence in the
light most favorable to appellant and give him the benefit of reasonable
inferences from it, without regard to whether the evidence is credible,
controverted, or in conflict with other evidence.’”  Ray v.
State, 106 S.W.3d 299, 302 (Tex. App.—Houston [1st Dist.] 2003, no pet.)
(quoting Upchurch v. State, 23 S.W.3d
536, 540 (Tex. App.—Houston [1st Dist.] 2000, pet. ref’d)); accord Banda v. State, 890 S.W.2d 42, 60 (Tex. Crim. App. 1994).  “Regardless of its strength or weakness, if
any evidence raises the issue that the defendant was guilty only of the lesser
offense, then the charge must be given.” 
O’Brien, 89 S.W.3d 753, 755
(Tex. App.—Houston [1st Dist.] 2002, pet. ref’d) (citing Saunders v. State, 840 S.W.2d 390, 391 (Tex. Crim. App. 1992)).

The evidence relied upon by Turner
to support charging the jury on the lesser-included offenses of robbery and
aggravated robbery comes from the statement he gave to the police shortly after
he was arrested on suspicion of participation in Lam’s murder.  Viewing the evidence in the light most favorable
to Turner, the evidence shows that he conceded that he accompanied Brown from
the apartment complex to the immediate vicinity of the store and was standing nearby
when Brown approached Lam, demanded her purse, shot her with a black .38
handgun, and took her purse.  After
seeing Brown shoot Lam, Turner fled the scene. 
He was followed by Brown and both returned to the apartment complex.

After stating that he and Brown
“were walking to the store,” Turner was asked, “Did he say he was going to rob
her?”  Brown answered, “No.”  Turner was asked specifically, “Did you know
he had a gun on him?”  He responded, “No,
I don’t.”  

The State argues that, under the
second prong of Hall, Turner was not
entitled to jury instructions on robbery or aggravated robbery because there
was no evidence that Turner was guilty of only the lesser-included offenses.  See Solomon
v. State, 49 S.W.3d 356, 368–69 (Tex. Crim. App. 2001).  The evidence supporting a lesser-included
charge must be directly germane to the lesser-included offense.  Id.
at 369.[7]  As applied to a request to instruct the jury
about robbery or aggravated robbery as lesser-included offenses with respect to
capital murder, the foregoing principles dictate that the second prong of Hall is met only if there is evidence in
the record showing either (1) there was no murder, (2) the murder was not
committed in furtherance of a conspiracy, or (3) the murder should not
have been anticipated.  Id.

As noted by the State, there is no
dispute that a murder took place.  Turner
does not argue that the murder was not committed in furtherance of a conspiracy
to rob the convenience store.  Therefore,
the only possible theory that could support Turner’s request for the lesser-included
charges is that evidence in the record would support a rational jury’s
conclusion that there was insufficient evidence to establish that he should
have reasonably anticipated that Brown would kill Lam in the course of robbing
the store, as would be necessary to find Turner guilty of capital murder as a
co-conspirator.  See id.; Tex. Penal Code Ann.
§ 7.02(a)(2) (Vernon 2003) (providing liability for felony committed by
co-conspirator in furtherance of the conspiracy’s unlawful purpose if the
felony “should have been anticipated as a result of the carrying out of the
conspiracy”).  Like the capital murder
instruction, the lesser instruction on felony murder given in this case also
required the jury to find that Turner reasonably anticipated that Brown would commit
murder in furtherance of the conspiracy.

We must determine whether there is any
evidence in the record, credible or not, from which a reasonable jury could
have found that Turner failed to anticipate the murder.  In his statement to the police, Turner said
that he did not know Brown had a gun at the time of the robbery,[8] and that he first saw it
that night when Brown pulled the gun on Lam and demanded her purse.  At oral argument, the Court asked counsel for
the State whether a reasonable jury could have convicted Turner of robbery and
acquitted him of felony murder and capital murder.  The State conceded, “Conceivably,
conceivably.” 

We agree.  Without regard to Turner’s credibility, we
conclude that his statements that he did not know Brown had a gun and that he
did not see the gun until Brown pointed it at Lam constitute some evidence that,
if believed by the jury, could have supported a conclusion that although Turner
was guilty of conspiracy to rob the store, he nevertheless did not reasonably
anticipate that Brown would commit murder in furtherance of the
conspiracy.  See Jones v. State, 921 S.W.2d 361, 364 (Tex. App.—Houston [1st
Dist.] 1996, pet. ref’d) (“A jury, as the trier of fact, is entitled to believe
all or part of the conflicting testimony proffered and introduced by either
side.  The jury can selectively believe
all or part of the evidence admitted at trial.”).  Accordingly, we conclude that the trial court
should have instructed the jury on the lesser-included offense of robbery, and
we hold that the court erred by not doing so. 
Because the trial court erred by failing to instruct on robbery, we need
not decide whether the trial court also should have instructed on aggravated
robbery.

C.   Harm Analysis

“The erroneous refusal to give a
requested instruction on a lesser-included offense is charge error subject to
an Almanza harm analysis.”  O’Brien,
89 S.W.3d at 756 (citing Saunders,
840 S.W.2d at 392); see Almanza v. State, 686 S.W.2d 157, 171
(Tex. Crim. App. 1985) (op. on rehearing). 
We must reverse if the trial court’s error caused the accused “some” or
“any” harm.  Arline v. State, 721 S.W.2d 348, 351 (Tex. Crim. App. 1986); Almanza, 686 S.W.2d at 171; O’Brien, 89 S.W.3d at 756.  When the trial court’s failure to submit the
requested lesser-included-offense instruction has “left the jury with the sole
option either to convict the defendant of the greater offense or to acquit
him,” a finding of harm is automatic.  Saunders v. State, 913 S.W.2d 564, 571 (Tex.
Crim. App. 1995); accord Robalin v. State, 224 S.W.3d 470, 477
(Tex. App.—Houston [1st Dist.] 2007, no pet.). 


In Saunders, the Court of Criminal Appeals held that harm may not be
automatic when the trial court instructed the jury on one lesser-included
offense that was raised by the evidence but denied the defendant’s request to
instruct the jury on a different lesser-included offense.  Saunders,
913 S.W.2d at 571.  In such a circumstance,
the submission of the lesser-included offense would provide the jury with a
compromise between conviction for the greater offense and acquittal.  Id.  Thus, a jury’s decision to convict the
defendant for the greater offense could negate a finding of “some” harm.  Id.

The trial court instructed the jury
on capital murder, for which the punishment was statutorily mandated to be
imprisonment for life or life without parole, and on felony murder, a first
degree felony for which the statutory punishment range is 5 to 99 years’
confinement.  See Tex. Penal Code Ann.
§ 12.31 (Vernon Supp. 2009) (capital murder); id. § 12.32 (Vernon Supp. 2009) (punishment range for first-degree
felony), id. § 19.02(b)(3), (c)
(Vernon 2003) (defining felony murder and stating it is first-degree
felony).  By contrast, robbery is a
felony of the second degree, for which the punishment range is 2 to 20 years’
confinement.  Tex. Penal Code Ann. § 12.33 (Vernon Supp. 2009)
(statutory punishment range for second-degree felony); id. § 29.02(b) (Vernon 2003) (robbery).  Turner was sentenced to life imprisonment for
capital murder; had he been found guilty of the lesser offense of robbery, he
could have been sentenced to confinement for a maximum of 20 years.

The crux of Turner’s argument is
that his statement to the police that he did not know that Brown had a gun with
him is some evidence that he did not reasonably anticipate the possibility of
Lam’s murder.  Here the capital murder elements
in the jury charge and the felony-murder elements in the jury charge each
included elements that required the jury to find that Turner should have
anticipated that the murder of Lam would occur as a result of the carrying out
of the conspiracy to rob her.  The jury
was not offered the possibility of convicting on any charge that did not
include as an element Turner’s reasonable anticipation of a murder committed by
Brown.  Thus, although the trial court
instructed the jury on one lesser-included offense, on the facts of this case,
felony murder was not a compromise in regard to the issue of anticipation.  This case, therefore, is not an exception to
the rule of automatic harm.  Contra Saunders, 913 S.W.2d at 571.

Accordingly, we hold that the trial
court’s failure to give Turner’s requested instructions on the lesser-included
offense of robbery caused Turner some harm, and we sustain his second issue.

Conclusion

          Because
the trial court’s erroneous denial of Turner’s requested instruction on the lesser-included
offense of robbery caused him some harm, we reverse the judgment in this case
and remand the case to the trial court for a new trial.

 

 

 

                                                                   Michael
Massengale

                                                                   Justice


 

Panel consists of Justices Jennings, Alcala, and
Massengale.

Do
not publish.   Tex. R. App. P. 47.2(b).











[1]        In light
of our disposition of this appeal, it is unnecessary for us to address Turner’s
other issues, which include his contentions that the trial court erred by denying the motion to suppress his recorded
statement because the magistrate did not ask him if he wished to waive his
right to remain silent (issue one) and that the trial court gave an erroneous
jury instruction regarding the law of parties (issue three).

 





[2]
          We need not resolve Turner’s first issue, relating
to his request to suppress evidence of his statement to the police, in order to
analyze the sufficiency of the evidence to support a conviction for capital
murder.  “If the sufficiency of the
evidence is challenged following a jury trial, appellate courts consider all of
the evidence presented whether properly or improperly admitted.”  Green
v. State, 893 S.W.2d 536, 540 (Tex. Crim. App. 1995).





[3]          A person commits robbery if,
while unlawfully appropriating property with the intent to deprive the owner of
the property, he intentionally, knowingly, or recklessly causes bodily injury
to another or intentionally or knowingly threatens or places another in fear of
imminent bodily injury or death.  See Tex.
Penal Code Ann. § 29.02 (Vernon 2003).

 





[4]
          A person commits the offense of capital murder if he
intentionally or knowingly causes the death of an individual while in the
course of committing or attempting to commit certain delineated felonies,
including robbery.  See id. § 19.02(b)(1) (Vernon 2003), § 19.03(a)(2) (Vernon Supp.
2009).

 





[5]
          Id. § 7.02(b) (Vernon 2003); Love v. State, 199 S.W.3d 447, 452 (Tex.
App.—Houston [1st Dist.] 2006, pet. ref’d).





[6]          306 S.W.3d 259 (Tex. Crim.
App. 2009) (per curiam op. on reh’g).

 





[7]
          Though not argued by the State, we are aware of
authority to the effect that when a defendant denies having committed any crime
and there is no other evidence in the record from which a jury could find that
the defendant committed only the lesser offense, then the defendant is not
entitled to a lesser-included offense instruction.  See,
e.g., Lofton v. State, 45 S.W.3d
649, 652 (Tex. Crim. App. 2001); Smith v.
State, 187 S.W.3d 186, 196 (Tex. App.—Fort Worth 2006, pet. ref’d); Johnson v. State, 84 S.W.3d 726, 730
(Tex. App.—Houston [1st Dist.] 2002, pet. ref’d).  Read in its entirety, Turner’s statement to
the police did not deny knowledge of the offense or deny that he was
present.  Rather, he admitted going to
the store with Brown, remaining nearby while Brown robbed and killed the clerk,
and then rejoining Brown at Turner’s apartment where he took possession of the
purse stolen from the clerk.





[8]
          Knowledge that a co-conspirator would use a gun
during the course of a robbery can show that the defendant should have
anticipated that a death could result from the robbery.  See
Love, 199 S.W.3d at 453; see also
Longoria v. State, 154 S.W.3d 747, 757 n.7 (Tex. App.—Houston [14th Dist.]
2004, pet. ref’d) (citing Tippitt v.
State, 41 S.W.3d 316, 324–25 (Tex. App.—Fort Worth 2001, no pet.) (listing
cases holding that proof of knowledge that gun would be used in robbery
supported finding that resulting murder should have been anticipated), overruled on other grounds by Hooper v. State, 214 S.W.3d 9, 15 (Tex.
Crim. App. 2007)).