**Richard Benjamin SMITH, Appellant,**

v.

**The STATE of Texas, State.**

**No. 2–04–532–CR.**

Court of Appeals of Texas,
Fort Worth.

Feb. 16, 2006.

J.R. Molina, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., Charles M. Mallin, Asst. Crim. Dist. Atty. Chief of the Appellate Section, Anne Swenson, David M. Curl, Alan Levy and Miles Bris-

sette, Asst. Crim. Dist. Attys, Fort Worth, for appellee.

PANEL F: CAYCE, C.J.; LIVINGSTON and McCOY, JJ.

## MEMORANDUM OPINION[1]

JOHN CAYCE, Chief Justice.

Richard Benjamin Smith appeals his conviction and sentence for capital murder. In nine issues, appellant complains that the trial court erred by admitting certain out-of-court statements into evidence, that the evidence is legally and factually insufficient to support his conviction, that testimony from a State's expert witness exceeded the witness's expertise, that the statute authorizing his automatic life sentence is unconstitutional, and that the trial court erred by not instructing the jury on the lesser-included offense of murder. We affirm.

Appellant was tried and convicted for the capital murder of Nasir Meraj, a convenience store clerk, while in the course of committing or attempting to commit robbery. The trial court's charge instructed the jury that appellant could be found guilty of the offense as a party. The jury returned a general verdict of guilty on the capital murder charge.

■■■ In his fifth and sixth issues, appellant contends that the evidence is legally and factually insufficient to support his capital murder conviction under the law of parties. Appellant asserts that there is no evidence he "was 'acting with intent to promote or assist the commission of' an intentional murder"[2] because he was, at most, merely present at the scene of the offense and did not participate in the crime. Appellant further contends, without elaboration, that there is no evidence he "was on notice that an intentional murder was a possible result of the carrying out of a conspiracy to commit [robbery]."[3]

In reviewing the legal sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict in order to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4] In reviewing the factual sufficiency of the evidence to support a conviction, we are to view all the evidence in a neutral light, favoring neither party.[5] The only question to be answered in a factual sufficiency review is whether, considering the evidence in a neutral light, the fact finder was rationally justified in finding guilt beyond a reasonable doubt.[6] There are two ways evidence may be factually insufficient: (1) when the evidence supporting the verdict or judgment, considered by itself, is too weak to support the finding of guilt beyond a reasonable doubt; or (2) when there is evidence both supporting and contradicting the verdict or judgment and, weighing all of the evidence, the contrary evidence is so strong that guilt cannot be proven beyond a reasonable doubt.[7]

A person commits the offense of capital murder if he intentionally commits murder

1. See Tex.R.App. P. 47.4.

2. See Tex. Penal Code Ann. § 7.02(a)(2) (Vernon 2003).

3. See id. § 7.02(b).

4. Jackson v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); Hampton v. State, 165 S.W.3d 691, 693 (Tex. Crim.App.2005).

5. See Zuniga v. State, 144 S.W.3d 477, 481 (Tex.Crim.App.2004).

6. Id. at 484.

7. Id. at 484–85.

in the course of committing or attempting to commit robbery.[8] A person can be found guilty of capital murder as a party under the two theories of criminal responsibility codified in section 7.02 of the penal code.[9] Under section 7.02(a)(2), a person is criminally responsible for an offense as a party if, acting with intent to promote or assist the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense.[10] Further, section 7.02(b) provides that if, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.[11] Thus, if the evidence is sufficient to support appellant's conviction as a party under either section 7.02(a)(2) or 7.02(b), we must uphold the conviction.[12]

In this case, Meraj was brutally murdered just after 8:00 p.m. on October 17, 2002, during the course of an armed robbery at the convenience store where he was employed. Appellant's counsel conceded at trial that he was present during the robbery and murder.[13]

The evidence shows as follows. At around 7:00 p.m. on October 17, 2002, Felipe Gonzales went to the house of his cousin, Jesse Hurtado, to borrow Hurtado's twelve-gauge shotgun. Hurtado testified that Felipe arrived in appellant's car, which was probably driven by appellant. Appellant waited in the car while Felipe obtained the gun and ammunition.[14]

Appellant, Felipe, and Felipe's brother, Fernando Gonzales Jr., then went to the convenience store and began casing it at around 7:44 p.m. Over the next 32 minutes, the three men repeatedly entered and left the store. Appellant was the first to enter. He made a purchase, exited, and then returned a short time later with Fel-

8. TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp.2005); *Hernandez v. State,* 171 S.W.3d 347, 351–52 (Tex.App.-Houston [14th Dist.] 2005, pet. ref'd.).

9. *See Montoya v. State,* 810 S.W.2d 160, 165 (Tex.Crim.App.1989) (referring to both section 7.02(a) and section 7.02(b) as theories of party liability), *cert. denied,* 502 U.S. 961, 112 S.Ct. 426, 116 L.Ed.2d 446 (1991); *see also* TEX. PENAL CODE ANN. § 7.01(a) (Vernon 2003) ("A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both.").

10. TEX. PENAL CODE ANN. § 7.02(a)(2).

11. *Id.* § 7.02(b).

12. *Swearingen v. State,* 101 S.W.3d 89, 95 (Tex.Crim.App.2003); *Rabbani v. State,* 847 S.W.2d 555, 558 (Tex.Crim.App.1992), *cert. denied,* 509 U.S. 926, 113 S.Ct. 3047, 125 L.Ed.2d 731 (1993).

13. For instance, the convenience store's videotape showing the robbery and murder was admitted into evidence at trial. While cross-examining the State's expert witness about the videotape, defense counsel stated, "[F]or simplification purposes, let's just concede that suspect one [on the video] is Richard Smith." Later, defense counsel asserted that "[i]dentity was not really an issue in this case."

14. Hurtado's testimony about appellant's participation in obtaining the gun is somewhat inconsistent. Initially, he testified that appellant and Felipe arrived in appellant's car, and appellant was driving. Later, however, Hurtado testified that he only saw appellant "somewhat" and could not be 100% sure that appellant was the driver, but believed it was probably him because appellant and Felipe were the only two people who ever drove the car around Hurtado. Hurtado did not see a third person in the car. He conceded that the driver could have been Fernando, but reiterated that he had never seen anyone except appellant and Felipe drive the car.

ipe. Appellant, and possibly Felipe, then obtained change from Meraj, and both men went to the store's back room which was used for a pool room. From that point, appellant stayed in the store until after the murder had occurred; however, he made several trips back and forth between the pool room and the check-out counter.

Felipe and Fernando also each entered and exited the convenience store more than once. Eventually, Fernando entered the store carrying the shotgun. Fernando pointed the gun at Meraj, who emptied the contents of the cash register onto the check-out counter. Then, ignoring Meraj's pleas, Fernando marched him into the back room, where he immediately shot Meraj in the chest with bird shot. Next, Fernando shot Meraj in the head with a shotgun shell. Meraj's head was essentially blown off. The crime scene was so gruesome that police had to lay down rolls of brown paper to avoid walking on blood and brain matter.

Meanwhile, as Fernando was forcing Meraj into the back room, Felipe and appellant exited that room. Appellant's hands were raised to shoulder level for one or two seconds; then he lowered them and walked towards the door as the two shots were being fired. He paused for a brief conversation with Felipe, who was stuffing money from the cash register into his pockets, and then exited the store following the second shot. Felipe motioned to Fernando and hurried out; Fernando followed a few seconds later. Although Felipe ducked when the first shot was fired and also reacted to the second, appellant showed no reaction to either shot.

After the crime, Fernando, Felipe, and appellant returned to Hurtado's residence in appellant's car. Felipe and Hurtado then went to buy some beer. Felipe used a wad of cash to buy the beer and told Hurtado, "we jacked somebody."[15] When the two men returned to Hurtado's home, Fernando (not Felipe) stated that "he just jacked somebody"; appellant and Felipe nodded their heads in agreement.[16] Appellant later told jail staff that he had killed someone.

Based on all of this evidence, we hold that the evidence is both legally and factually sufficient to support appellant's conviction of capital murder as a party under both section 7.02(a)(2) and 7.02(b). We overrule appellant's fifth and sixth points.

■ In his first and second points, appellant complains that the trial court improperly admitted Hurtado's testimony that Fernando told him "[t]hat he [Fernando] just jacked somebody." Appellant contends that this statement is inadmissible hearsay and that its admission violated his federal constitutional right to confrontation.

■ Although Hurtado's statement is hearsay,[17] it was admissible under the statement-against-interest exception to the hearsay rule if (1) it tended to expose the declarant,[18] Fernando, to criminal liability,

---

**15.** Hurtado testified that to "jack" someone means to "[r]un up on somebody, take them, take their money at gunpoint or knife or something, any kind of weapon."

**16.** According to Hurtado, Felipe first stated, *"we* jacked somebody," and Fernando later stated that *"he* just jacked somebody." [Emphasis supplied.] Appellant was present and nodded his assent only when the second statement was made.

**17.** *See* TEX.R. EVID. 801(d).

**18.** Appellant complains that the statement was not against his penal interest; however, the proper inquiry is whether the statement is against the *declarant's* interest. TEX.R. EVID. 803(24).

and (2) it was corroborated by circumstances clearly indicating its trustworthiness.[19] Appellant concedes that both of these factors are present in this case.[20] Obviously, the statement tended to expose Fernando to criminal liability because he was admitting that he had just robbed someone. Further, the statement was sufficiently corroborated because Fernando was videotaped committing the crime. In addition, at the time Fernando made the statement, he, Felipe, and appellant had just returned Hurtado's shotgun to him. Therefore, the trial court did not abuse its discretion by concluding that the statement was admissible under this exception to the hearsay rule.[21]

■ Regarding appellant's Confrontation Clause complaint, Fernando's statement was admissible under the Confrontation Clause if it was non-testimonial in nature and possessed adequate indicia of reliability.[22] We have already concluded that Fernando's statement possessed sufficient indicia of reliability because it was corroborated by his videotaped actions. Moreover, the statement is non-testimonial in nature because it was made at an informal gathering of friends drinking beer and not in court, before a grand jury, or in response to police interrogation.[23] Therefore, the trial court did not violate appellant's right to confrontation by admitting the statement. We overrule appellant's first and second points.[24]

■ In his third and fourth points, appellant complains that the trial court improperly admitted Hurtado's testimony that Felipe told him that "we jacked somebody." As with Fernando's statement, Appellant contends that Felipe's statement is inadmissible hearsay and that its admission violated his federal constitutional right to confrontation.

Like Fernando's statement, Felipe's statement was admissible under the statement-against-interest exception to the hearsay rule because (1) it tended to expose the declarant, Felipe, to criminal liability, and (2) it was corroborated by circumstances clearly indicating its trustworthiness.[25] Further, although Felipe's statement implicates himself and another person or persons, it is nonetheless admissible under the statement-against-interest exception to the hearsay rule if (1) it was sufficiently against Felipe's penal interest, as well as the third party's, to

**19.** *Id.; Bingham v. State,* 987 S.W.2d 54, 57 (Tex.Crim.App.1999).

**20.** For instance, appellant states, "Fernando's inculpatory statement about himself is sufficiently against his interest and is corroborated by other evidence."

**21.** *See Bingham,* 987 S.W.2d at 57.

**22.** *See Woods v. State,* 152 S.W.3d 105, 113 (Tex.Crim.App.2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 2295, 161 L.Ed.2d 1092 (2005); *see also Crawford v. Washington,* 541 U.S. 36, 68, 124 S.Ct. 1354, 1374, 158 L.Ed.2d 177 (2004) (holding that, "[w]here testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation").

The requirements that the declarant be unavailable and the subject of prior cross-examination apply only to testimonial statements, not to non-testimonial ones. *See Crawford,* 541 U.S. at 68, 124 S.Ct. at 1374.

**23.** *See id.,* 124 S.Ct. at 1374; *Woods,* 152 S.W.3d at 113–14.

**24.** To the extent appellant is complaining that Fernando's statement was inadmissible due to its irrelevance, he has forfeited this complaint because he did not raise it below. *See* TEX. R.APP. P. 33.1(a); *Hailey v. State,* 87 S.W.3d 118, 122 (Tex.Crim.App.2002), *cert. denied,* 538 U.S. 1060, 123 S.Ct. 2218, 155 L.Ed.2d 1111 (2003).

**25.** TEX.R. EVID. 803(24); *Bingham,* 987 S.W.2d at 57.

be reliable and (2) it was corroborated by circumstances clearly indicating its trustworthiness.[26]

■ Here, the statement was sufficiently against Felipe's penal interest because it was an admission that he just robbed someone.[27] Further, the statement was sufficiently corroborated because Hurtado testified that Felipe, accompanied by appellant, had borrowed Hurtado's shotgun earlier that day, Felipe's guilt was not inconsistent with appellant's, the statement was made to a relative, Hurtado, and the statement was spontaneous—Felipe offered it as an explanation for why he was carrying a thick wad of cash and shortly after Felipe, Fernando, and appellant had returned Hurtado's shotgun to him.[28] Therefore, the trial court did not abuse its discretion by concluding that the statement was admissible under this exception to the hearsay rule.[29] Moreover, because the statement was non-testimonial in nature, the trial court did not violate appellant's right to confrontation by admitting it.[30] We overrule appellant's third and fourth points.

■ In his seventh point, appellant complains that the trial court erred by allowing a State's expert witness, Grant Fredericks, to testify to matters that exceeded his expertise. This complaint is not preserved for our review because appellant did not object at trial to Fredericks's testimony based on his alleged lack of expertise.[31] We overrule appellant's seventh point.

■ In his eighth point, appellant asserts that the trial court improperly overruled his motion to hold that penal code section 7.02(b) is unconstitutional as applied to him because "it allows him t[o] be convicted of capital murder without proof that he possessed the requisite intent to kill."

■ Section 7.02(b) requires proof of the intent to engage in a conspiracy to commit the felony offense that resulted in the capital murder.[32] "The transference of the mental element establishing criminal responsibility for the original act to the resulting act conforms to and preserves the traditional mens rea requirement of the criminal law."[33] As we have discussed, there is ample evidence that appellant intended to engage in the conspiracy to commit the robbery that resulted in the capital murder in this case. Therefore, section 7.02(b) is not unconstitutional as applied to appellant.

■ Appellant further contends that the penal code's provision for the assessment of an automatic life sentence in non-death penalty capital murder cases "is un-

26. Tex.R. Evid. 803(24); *Dewberry v. State,* 4 S.W.3d 735, 751 (Tex.Crim.App.1999), *cert. denied,* 529 U.S. 1131, 120 S.Ct. 2008, 146 L.Ed.2d 958 (2000).

27. *See Dewberry,* 4 S.W.3d at 751.

28. *See id.* (listing similar corroborating factors).

29. *See id.* at 752; *Bingham,* 987 S.W.2d at 57.

30. *See Woods,* 152 S.W.3d at 113–14.

31. *See* Tex.R.App. P. 33.1(a); *Heidelberg v. State,* 144 S.W.3d 535, 537 (Tex.Crim.App. 2004). Likewise, we will not address appellant's one-phrase argument that Fredericks's testimony "invaded the province of the jury," because this complaint is not briefed. *See* Tex.R.App. P. 38.1(h); *Tong v. State,* 25 S.W.3d 707, 710 (Tex.Crim.App.2000), *cert. denied,* 532 U.S. 1053, 121 S.Ct. 2196, 149 L.Ed.2d 1027 (2001).

32. *See* Tex. Penal Code Ann. § 7.02(b).

33. *Rodriquez v. State,* 548 S.W.2d 26, 29 (Tex. Crim.App.1977) (rejecting constitutional challenge to felony-murder statute).

acceptable and incompatible with the commands of the Eighth and Fourteenth Amendments." Appellant cites no relevant authority supporting his arguments.[34] It is well settled that a mandatory life sentence for the offense of capital murder is not unconstitutional.[35] Therefore, the trial court did not err by overruling appellant's motion. We overrule appellant's eighth point.

In his ninth point, appellant complains that the trial court erred by refusing to instruct the jury on the lesser-included offense of felony murder. Although appellant only requested a charge on "murder," and not on felony murder,[36] he argues that he was entitled to a felony murder charge because (1) the murder statute lists felony murder as a type of murder, and (2) there is no evidence that he knew about the planned robbery or that the resulting murder would occur. Assuming for argument's sake that appellant's request for a charge on "murder"

preserved for our review his complaint that the trial court erred by not charging the jury on *felony* murder, we hold, nonetheless, that the trial court did not err by refusing the requested charge.

We use a two-pronged test to determine whether a defendant is entitled to an instruction on a lesser included offense.[37] First, the lesser included offense must be included within the proof necessary to establish the offense charged.[38] Second, some evidence must exist in the record that would permit a jury to rationally find that if appellant is guilty, he is guilty only of the lesser offense.[39]

Felony murder and murder are lesser-included offenses of capital murder.[40] The element distinguishing capital murder from felony murder is the intent to kill.[41] Felony murder is an unintentional murder committed in the course of committing a felony.[42] Capital murder in-

34. The two authorities appellant cites are inapposite. *See Beck v. Alabama*, 447 U.S. 625, 627, 100 S.Ct. 2382, 2384, 65 L.Ed.2d 392 (1980) (holding that a death sentence may not be imposed after a jury verdict of guilt in a capital case when the jury was not permitted to consider a verdict of guilt of a lesser-included noncapital offense and the evidence would have supported such a verdict); *Lockett v. Ohio*, 438 U.S. 586, 607–08, 98 S.Ct. 2954, 2966–67, 57 L.Ed.2d 973 (1978) (holding Ohio death penalty statute unconstitutional because it did not permit individualized consideration of mitigating factors required by Eighth and Fourteenth Amendments in capital cases). We decline to apply the reasoning of these cases by analogy to the penal code's provision for the assessment of an automatic life sentence in nondeath penalty capital murder cases.

35. *Harmelin v. Michigan*, 501 U.S. 957, 994–95, 111 S.Ct. 2680, 2701, 115 L.Ed.2d 836 (1991); *Barnes v. State*, 56 S.W.3d 221, 239 (Tex.App.-Fort Worth 2001, pet. ref'd).

36. Appellant's counsel stated: "We would also request a charge on the lesser included offense of murder, Your Honor."

37. *Rousseau v. State*, 855 S.W.2d 666, 672–73 (Tex.Crim.App.), *cert. denied*, 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993); *Royster v. State*, 622 S.W.2d 442, 446 (Tex.Crim. App.1981).

38. *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim.App.2005); *Rousseau*, 855 S.W.2d at 672–73; *Royster*, 622 S.W.2d at 446.

39. *Salinas*, 163 S.W.3d at 741; *Rousseau*, 855 S.W.2d at 672–73; *Royster*, 622 S.W.2d at 446.

40. *Threadgill v. State*, 146 S.W.3d 654, 665 (Tex.Crim.App.2004).

41. *Id.*

42. Tex. Penal Code Ann. § 19.02(b)(3) (Vernon 2003); *Fuentes v. State*, 991 S.W.2d 267, 272 (Tex.Crim.App.), *cert. denied*, 528 U.S. 1026, 120 S.Ct. 541, 145 L.Ed.2d 420 (1999).

cludes an intentional murder committed in the course of robbery.[43] For a criminal defendant to be entitled to an instruction on felony murder, there must be some evidence that would permit a jury rationally to find that the defendant intended to commit the robbery but not to cause the death of the victim.[44] Whether the defendant intended to kill the victim before the robbery took place is irrelevant; the issue is whether there is any evidence that the defendant did not intend the victim's death when the murder was committed.[45]

Appellant does not direct us to any evidence that he intended to commit the robbery but not the resulting murder. To the contrary, appellant simply argues that there is no evidence of his intent to commit either crime. He asserts that there is no evidence that he knew about the robbery, that he knew Fernando had a gun, or that he, himself, was armed. He further asserts that the fact that the video shows his hands raised briefly at one point shows that he did not intend for the murder to occur.

■ Even if we were persuaded by these arguments, which we are not, they would not entitle appellant to the lesser-included offense charge he requested. Evidence that shows no offense occurred at all is not adequate to raise the issue of a lesser-included offense, and a charge on a lesser-included offense is not required in that situation.[46] Instead, the evidence must establish that if a defendant is guilty, he is guilty only of the lesser included offense.[47]

Further, there is no evidence that appellant did not intend to kill Meraj at the time the murder occurred. Rather, the evidence shows that appellant made no attempt to stop Fernando from shooting Meraj or to leave the store before or during the murder, made no statements or gestures to Fernando or Felipe indicating that shooting Meraj was not part of the parties' plan, and showed no surprise or negative reaction to the shooting, but instead conversed with Felipe while it was occurring. In addition, appellant later told jail personnel that he had killed someone. Appellant's statement to jail personnel was made in a joking manner; he did not indicate that the killing was accidental or unintentional.

■ Finally, appellant's raising of his hands for a second or two as he exited the store's back room just before the shooting occurred is not, either alone or when considered in the context of the other events on the videotape, evidence that appellant did not intend for the killing to occur. It is a normal reaction to raise one's hands when a loaded gun is being brandished about, even if the bullet is intended for something or someone else. Further, appellant could have raised his hands simply for show, for the store's video surveillance cameras. Without some evidence indicating why appellant raised his hands, the jury could only have speculated regarding his reason for doing so. Speculation does not affirmatively raise an issue regarding a lesser-included offense.[48]

**43.** Tex. Penal Code Ann. § 19.03(a)(2); *Fuentes*, 991 S.W.2d at 272.

**44.** *Threadgill*, 146 S.W.3d at 665.

**45.** *Fuentes*, 991 S.W.2d at 272–73.

**46.** *Lofton v. State*, 45 S.W.3d 649, 652 (Tex. Crim.App.2001).

**47.** *Salinas*, 163 S.W.3d at 741; *Lofton*, 45 S.W.3d at 652.

**48.** *Anderson v. State*, 125 S.W.3d 729, 734 (Tex.App.-Texarkana 2003, no pet.); *see also Hall v. State*, 682 S.W.2d 608, 609 (Tex.App.-Beaumont 1984, no pet.) (stating that "mere speculation, conjecture or surmise" does not meet the second prong of the *Royster* test).

Because there is no evidence that appellant did not intend Meraj's death at the time the murder occurred, the trial court did not err by refusing to charge the jury on felony murder. Therefore, we overrule appellant's ninth point.

Having overruled all of appellant's points, we affirm the trial court's judgment.

Indeed, when appellant's attorney hypothesized about this evidence at trial, the trial court sustained the State's speculation objection, and appellant does not contest that ruling.