

# NUMBER 13-08-00562-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

JOHN DAVID URBINA,                                                      Appellant,

v.

THE STATE OF TEXAS,                                                    Appellee.

### On appeal from the 275th District Court
### of Hidalgo County, Texas.

# MEMORANDUM OPINION

### Before Justices Rodriguez, Benavides, and Vela
### Memorandum Opinion by Justice Benavides

Appellant, John David Urbina, appeals from his conviction by a jury for capital murder. *See* TEX. PENAL CODE ANN. § 19.03(a)(2) (Vernon Supp. 2009). Urbina raises eleven issues on appeal. We affirm.

## I. BACKGROUND[1]

On April 22, 2007, Urbina lived in the 3200 block of South Closner in Edinburg, Texas, at a known "crack house." That evening, Miguel Aguilar was murdered during the course of a robbery at The Gas Depot convenience store in Edinburg, where Aguilar worked as a clerk. The following day, the "crack house" was raided by the Edinburg police, and Urbina, among others, was taken to the police station to be interviewed. Urbina cooperated with the investigators, tested negative for gun residue, passed a polygraph examination, and was allowed to leave the police station. During the week-long investigation into Aguilar's murder, Urbina visited the police station multiple times, usually at the request of Robert Alvarez, an investigator with the Edinburg Police Department.

On May 2, 2007, Urbina gave a written and oral statement to Detective Alvarez in which Urbina indicated that he procured a handgun for "Gil," who then robbed The Gas Depot and killed Aguilar, while Urbina acted as a scout and a lookout.[2] Both the written and oral statements were admitted into evidence over Urbina's objection and motion to suppress. The jury charge authorized the jury to find Urbina guilty of capital murder, murder, or aggravated robbery as either the principal actor or as a party to the offenses. The jury returned a general verdict of guilty of capital murder, and the trial court imposed a sentence of life imprisonment without parole. *See id.* § 12.31(a)(2) (Vernon Supp. 2009) (providing a sentence of life without parole in capital murder cases when the State does not seek the death penalty). This appeal ensued.

---

[1] As this is a memorandum opinion and the parties are familiar with the facts of the case, we will not recite them here except as necessary to advise the parties of this Court's decision and the basic reasons for it. *See* TEX. R. APP. P. 47.4.

[2] Urbina's statements do not indicate whether "Gil" is Gilberto Villarreal, the person listed in the jury charge as either the primary actor or a party to Aguilar's murder. However, neither party to this appeal asserts that the "Gil" referred to in the statement is anyone other than Gilberto Villarreal.

## II. Motion to Suppress

In his first issue, Urbina argues that the trial court erred by denying his motion to suppress. Urbina contends that the oral and written statement he made was involuntary because it was induced by promises made to him by Detective Alvarez. *See* TEX. CODE CRIM. PROC. ANN. art. 38.21 (Vernon 2005); *Martinez v. State*, 127 S.W.3d 792, 794 (Tex. Crim. App. 2004). We disagree.

"Generally, a trial court's ruling on a motion to suppress is reviewed by an abuse of discretion standard." *Oles v. State*, 993 S.W.2d 103, 106 (Tex. Crim. App. 1999). We use a bifurcated standard, giving "'almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's fact findings are based on an evaluation of credibility and demeanor.'" *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007) (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). We "afford the same level of deference to a trial court's ruling on 'application of law to fact questions,' or 'mixed questions of law and fact,' if the resolution of those questions turns on an evaluation of credibility and demeanor." *Id.* (quoting *Montanez v. State*, 195 S.W.3d 101, 109 (Tex. Crim. App. 2006). We "review de novo 'mixed questions of law and fact' that do not depend upon credibility and demeanor." *Id.* (quoting *Montanez*, 195 S.W.3d at 109).

"At a hearing on a motion to suppress, the trial court is the sole and exclusive trier of fact and judge of the credibility of witnesses as well as the weight to be given their testimony." *Garza v. State*, 213 S.W.3d 338, 346 (Tex. Crim. App. 2007). As such, "the trial judge may choose to believe or disbelieve any or all of a witness's testimony." *Id.*

"A statement of an accused may be used in evidence against him if it appears that the same was freely and voluntarily made without compulsion or persuasion . . . ." TEX.

3

CODE CRIM. PROC. ANN. art. 38.21. "[F]or a promise to render a confession invalid under [a]rticle 38.21, the promise must be positive, made or sanctioned by someone in authority, and of such an influential nature that it would cause a defendant to speak untruthfully." *Martinez*, 127 S.W.3d at 794.

At the hearing on his motion to suppress, Urbina asserted that Detective Alvarez had used him as a confidential informant to help Detective Alvarez apprehend drug dealers through the use of "controlled buys." Urbina stated that Detective Alvarez used him in this manner six or seven times, that Detective Alvarez would give him the money to make a drug purchase, that he would make the purchase, that Detective Alvarez would arrest the dealer, and that Detective Alvarez would let him keep the drugs, which he would then consume. Urbina further testified that Detective Alvarez had also "made" some charges against Urbina "disappear."

Vanessa Baldazo, Urbina's fiancé, testified at the motion to suppress hearing that Detective Alvarez gave Urbina money on several occasions so that Urbina could buy gas, groceries, cigarettes, food, and soda. Baldazo saw Detective Alvarez take the money out of his own wallet and give it to Urbina. Baldazo also stated that she had asked Detective Alvarez to give her money to help her pay her bills and that Detective Alvarez promised to get her $250, although he never gave her any money.

Urbina and Baldazo both testified that during investigation into the murder, Detective Alvarez continually affirmed that Urbina was not going to be in any trouble and that everything was "okay." Urbina stated that, prior to recording his statement, he and Detective Alvarez drafted the statement in such a way that the statement could "be presented proper [sic] in court." Urbina asserted that Detective Alvarez needed the

4

statement of someone at the scene so that the actual murderer could be prosecuted and that Detective Alvarez promised him he would not go to jail but that Detective Alvarez would help him get into a drug rehabilitation program.

Detective Alvarez testified at the suppression hearing that he was not in the division of the police department that handled "controlled buys" and he could not have and did not use Urbina to handle such transactions. Detective Alvarez denied using Urbina as a confidential informant, but he recalled one instance where he paid Urbina $60 to contact him when a suspect in a different case came to Urbina's house. Regarding drug rehabilitation, Detective Alvarez noted that he instructed Urbina that Urbina could voluntarily enter a rehabilitation program, but that Detective Alvarez could not get him into one. Detective Alvarez asserted that he did not make any promises to Urbina in order to induce him to give the statements, that he did not tell Urbina what to say in the statements, and that Urbina gave the statements freely and voluntarily. Further, Urbina initialed the warning paragraph at the beginning of the written statement, which declared, in relevant part, that he understood his rights and that he "knowingly and voluntarily waive[d] such rights and freely and voluntarily [made] the . . . statement without compulsion or persuasion."

By denying Urbina's motion to suppress, the trial court impliedly chose to believe Detective Alvarez and to disbelieve Urbina and Baldazo. *See Garza*, 213 S.W.3d at 346. As the trier of fact at the suppression hearing, the trial court was the sole judge of the credibility of the witnesses and the weight to be given to their testimony. *See id.* The trial court found that no one promised Urbina anything in exchange for making the statements and that he made them voluntarily. We conclude that the trial court's decision to deny the

5

motion to suppress is within the zone of reasonable disagreement. *See State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006). Urbina's first issue is overruled.

### III. SUFFICIENCY OF THE EVIDENCE

By issues two, three, four, and five, Urbina contends that: (1) the evidence is legally and factually insufficient to support the verdict (issues two and three); (2) the trial court erred by denying his motion for directed verdict (issue four); and (3) the trial court erred by instructing the jury on the law of parties because the evidence did not support such an instruction (issue five).[3]

### A.    Standard of Review and Applicable Law

When reviewing the legal sufficiency of the evidence, we must determine whether "'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt'—not whether '[we believe] that the evidence at the trial established guilt beyond a reasonable doubt.'" *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 318-19 (1979)). "[W]e assess all of the evidence "'in the light most favorable to the prosecution.'" *Id.* (quoting *Jackson*, 443 U.S. at 319.) "After giving proper deference to the factfinder's role, we will uphold the verdict unless a rational factfinder must have had reasonable doubt as to any essential element."

---

[3] In their briefs to this Court, both parties combined these issues for discussion purposes. Because the standard of review for Urbina's legal sufficiency, directed verdict, and charge error issues is the same, we will also combine these issues for purposes of discussion. *See Perales v. State*, 117 S.W.3d 434, 443 (Tex. App.–Corpus Christi 2003, pet. ref'd) ("A challenge to the denial of a motion for directed verdict is a challenge to the legal sufficiency of the evidence.") (citing *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996)); *Mullins v. State*, 173 S.W.3d 167, 178 (Tex. App.–Fort Worth 2005, no pet.) (holding that because the evidence was legally and factually sufficient to support the appellant's conviction as a party, the trial court did not err by instructing the jury on the law of parties) (citing *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999)).

*Id.* at 518 (citing *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992)).

"Evidence that is legally sufficient, however, can be deemed factually insufficient in two ways: (1) the evidence supporting the conviction is 'too weak' to support the factfinder's verdict, or (2) considering conflicting evidence, the factfinder's verdict is 'against the great weight and preponderance of the evidence.'" *Id.* (quoting *Watson v. State*, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006)). In conducting a factual sufficiency review, we defer to the jury's findings. *Id.* We consider all of the evidence in a neutral light and will "find the evidence factually insufficient when necessary to 'prevent manifest injustice.'" *Id.* (quoting *Cain v. State*, 958 S.W.2d 404, 407 (Tex. Crim. App. 1997)).

"A challenge to the denial of a motion for directed verdict is a challenge to the legal sufficiency of the evidence." *Perales v. State*, 117 S.W.3d 434, 443 (Tex. App.–Corpus Christi 2003, pet. ref'd) (citing *Williams v. State*, 937 S.W.2d 479, 482 (Tex. Crim. App. 1996)). "In general, an instruction on the law of parties may be given to the jury whenever there is sufficient evidence to support a jury verdict that the defendant is criminally responsible under the law of parties." *Ladd v. State*, 3 S.W.3d 547, 564 (Tex. Crim. App. 1999).

We measure the legal and factual sufficiency of the evidence based on a hypothetically correct jury charge. *Grotti v. State*, 273 S.W.3d 273, 280-81 (Tex. Crim. App. 2008). A hypothetically correct jury charge "accurately promulgates the law, is authorized by the indictment, does not unnecessarily increase the state's burden of proof or restrict the state's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Id.* In a hypothetically correct jury charge, the elements of capital murder under section 19.03(a)(2) of the penal code are: (1) the person; (2)

during the course of committing or attempting to commit a robbery; (3) intentionally; (4) causes the death; (5) of an individual. *See* TEX. PENAL CODE ANN. § 19.03(a)(2); *see also id.* § 19.02(b)(1) (Vernon 2003) (listing the elements of murder)*.* A person commits aggravated robbery if he commits robbery and either "causes serious bodily injury to another" or "uses or exhibits a deadly weapon." *Id.* § 29.03(a)(1), (2) (Vernon 2003). "A person commits [robbery] if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally, knowingly, or recklessly causes bodily injury to another." *Id.* 29.02(a)(1) (Vernon 2003). "A person is criminally responsible for an offense committed by the conduct of another if . . . acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ." *Id.* § 7.02(a)(2) (Vernon 2003). When we review the sufficiency of the evidence supporting a defendant's participation as a party, "we may consider 'events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act.'" *King v. State*, 29 S.W.3d 556, 564 (Tex. Crim. App. 2000) (quoting *Ranson v. State*, 920 S.W.2d 288, 302 (Tex. Crim. App. 1994)). Additionally, "[c]ircumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

## B.     Discussion

Urbina argues that because there is no physical evidence linking him to either the robbery of The Gas Depot or to Aguilar's murder, the evidence is insufficient to support the jury's verdict and the trial court's instruction on the law of parties and that he was entitled

8

to a directed verdict.[4]   The State contends that Urbina's statement is sufficient evidence to sustain Urbina's conviction as a party to the offenses committed by Villarreal.  We agree with the State.

In his statement, Urbina stated that on the evening of April 22, 2007, Villarreal arrived at the house where Urbina was "getting high."  Villarreal and Urbina "smoked some crack," and Villarreal wanted "some more" but did not have any money.  Urbina did not have any money either, but he "had access to a pistol that [Villarreal] could use."  Villarreal left, and while Villarreal was gone, Urbina went to Tom Drewry's house and took a gun without Drewry's knowledge.  When Villarreal returned, Urbina gave him the gun, and Villarreal left to "scope it out."  Villarreal returned between 9:00 and 9:15 p.m., and informed Urbina that the only place he could "hit where they don't know him" was The Gas Depot.  Pursuant to Villarreal's instructions, Urbina rode his bike over to The Gas Depot to determine whether anyone was there.  Urbina returned and informed Villarreal that no one was at The Gas Depot.  Villarreal told Urbina to return to the store and, when Villarreal drove by, to "give [Villarreal] a signal that the coast was clear and that no one was at the store."  Urbina went back to the store and saw that only Aguilar was there.  He signaled to Villarreal, who robbed the store and killed Aguilar.  When Urbina saw Villarreal shoot Aguilar, he ran to some friends' motel room and took a shower.  Later that night, Urbina returned to Drewry's house and made sure that Drewry stayed high so that he would not

---

[4] The State argues that Urbina failed to adequately brief his argument concerning the jury instruction on the law of parties because he failed to cite any authorities to support his contention.  *See* Tex. R. App. P. 38.2.  However, Urbina recited the applicable standard of review for this issue and incorporated his legal sufficiency argument.  Following these recitations, Urbina presented his arguments on this issue.  The State followed the same pattern in its brief.  We conclude that Urbina properly briefed this issue.

suspect that his gun was missing. Villarreal returned the gun, and Urbina put the gun underneath Drewry's bed. Urbina went home, got high, and, when the cops arrived, he ran out the back door.

Urbina directs us to the testimony of the trial witnesses and asserts that none of these witnesses presented any physical evidence linking Urbina to the robbery and murder.[5] While we agree that there was no DNA or fingerprint evidence linking Urbina to the crimes, physical evidence is not necessary for a conviction in this case. *See Clayton*, 235 S.W.3d at 778. Urbina's statement demonstrates that he intended to promote or assist Villarreal in the robbery by procuring the gun and by acting as a scout and a lookout. *See* TEX. PENAL CODE ANN. § 7.02(a)(2); *Cumpian v. State*, 812 S.W.2d 88, 90 (Tex. App.–San Antonio 1991, no pet.) (holding evidence sufficient to sustain burglary conviction when witness identified defendant as a lookout). Urbina also indicated that Villarreal murdered Aguilar and that he fled the scene once he saw Villarreal shoot Aguilar. *See Clayton*, 235 S.W.3d at 780) ("[A] factfinder may draw an inference of guilt from the circumstance of flight."). Later, Urbina kept Drewry high while he hid the gun under Drewry's bed. *See Guevara v. State*, 152 S.W.3d 45, 50 (Tex. Crim. App. 2007) (stating that attempts to conceal incriminating evidence are circumstances of guilt). Nina Marie Lopez testified that on the night of the murder, while she was at Urbina's house, Urbina left

---

[5] Specifically, Urbina directs us to the testimony of the following witnesses: Anastacia Aguilar, Aguilar's mother; Elijio Vela, a granite shop owner; James Ramirez, a patrol officer with the Edinburg Police Department; Jose Francisco Garza, an investigator with the Edinburg Police Department; David Valdez, an investigator with the Edinburg Police Department; Norma Jean Farley, the chief forensic pathologist for Hidalgo County; Caleigh Rose Garcia, a college student who went into The Gas Depot following the murder but who did not see Aguilar's body; Richard Drewry, a fire marshal with the City of Edinburg who gave his brother, Tom Drewry, the gun used in Aguilar's murder; Rosie Rodriguez, the owner of The Gas Depot; Nina Marie Lopez, a person who used cocaine at the "crack house" with Urbina; Margaret Gonzalez, a customer of The Gas Depot who made a purchase from Aguilar shortly before he was murdered; and Detective Alvarez.

and returned with approximately $100 of cocaine. She noted that Urbina was "jumpy" and that Urbina told her that the police were after him and that he had been hiding "underneath where the canal was."

Reviewing the evidence in the light most favorable to the prosecution, we conclude that a rational juror could have found beyond a reasonable doubt that Urbina was guilty as a party to capital murder. *See Laster*, 275 S.W.3d at 517; *see also* TEX. PENAL CODE ANN. §§ 7.02(a)(2), 19.03(a)(2), 29.02(a)(2). Reviewing the evidence in a neutral light, we conclude that the evidence is not too weak to support the jury's verdict nor is the verdict against the great weight and preponderance of the evidence. *See Laster*, 275 S.W.3d at 518. Additionally, we conclude that the evidence is sufficient to support the jury's verdict that Urbina is criminally responsible under the law of parties and that the trial court did not err by including in the jury charge an instruction on the law of parties. *See Ladd*, 3 S.W.3d at 564; *Mullins v. State*, 173 S.W.3d 167 (Tex. App.–Fort Worth 2005, no pet.) (holding that when the evidence is sufficient to support the defendant's conviction as a party, the trial court does not err by including a law of parties instruction in the jury charge); *see also* TEX. PENAL CODE ANN. § 7.02(a)(2). Urbina's second, third, fourth, and fifth issues are overruled.

## IV. LESSER-INCLUDED OFFENSES

In his sixth and seventh issues, Urbina argues that the trial court erred by denying his requests to include in the jury charge instructions on the lesser-included offenses of manslaughter and criminally negligent homicide. *See* TEX. PENAL CODE ANN. § 19.04 (Vernon 2003) (Manslaughter); § 19.05 (Vernon 2003) (Criminally Negligent Homicide)

11

Urbina contends that because the charge contained the lesser-included offenses of murder and aggravated robbery, "some evidence of the charged offense of capital [murder] was absent." *See id.* § 19.02 (Murder); § 29.03 (Vernon 2003) (Aggravated Robbery). Urbina "suggests that the missing elements must involve the culpable mental state . . ." and that because murder and aggravated robbery involve different mental states than capital murder, the trial court erred by refusing to give instructions on manslaughter and criminally negligent homicide. The State asserts that the trial court did not err in denying Urbina's requests because "there was no evidence supporting a conclusion that [Urbina] . . . acted recklessly or with criminal negligence, as opposed to intentionally." We agree with the State.

A trial court includes a charge on a lesser-included offense when (1) "the lesser included offense [is] included within the proof necessary to establish the offense charged"; and (2) "some evidence [ ] exist[s] in the record that would permit a jury rationally to find that if appellant is guilty, he is guilty only of the lesser offense." *Smith v. State*, 187 S.W.3d 186, 195 (Tex. App.–Fort Worth 2006, pet. ref'd) (citing *Salinas v. State*, 163 S.W.3d 734, 741 (Tex. Crim. App. 2005); *Rousseau v. State*, 855 S.W.2d 666, 672-73 (Tex. Crim. App. 1993); *Royster v. State*, 622 S.W2d 442, 446 (Tex. Crim. App. 1981)). The State does not contest that manslaughter and criminally negligent homicide are lesser-included offenses of capital murder; therefore, Urbina has satisfied the first prong. *See Cardenas v. State*, 30 S.W.3d 384, 392 (Tex. Crim. App. 2000) (noting that manslaughter and criminally negligent homicide are lesser-included offenses of capital murder). We must determine whether there is some evidence in the record that would permit the jury to find that if Urbina

is guilty, he is guilty only of manslaughter or criminally negligent homicide. *Smith*, 187 S.W.3d at 195.

Here, the jury was charged that it could find Urbina guilty of capital murder either as the primary actor or as a party to Aguilar's murder. *See* TEX. PENAL CODE ANN. §§ 7.02(a)(2), 19.03(a)(2). Urbina challenges the trial court's denial of his requested instructions on the grounds that: (1) the evidence shows that he was aware of and disregarded the substantial risk that Villarreal would commit capital murder, therefore, he is only guilty of manslaughter; or (2) the evidence shows that he should have been aware substantial and unjustifiable risk that Villarreal would commit capital murder, therefore, he is guilty only of criminally negligent homicide. *See id.* § 19.04 (Manslaughter), § 19.05 (Criminally Negligent Homicide); *see also id.* § 6.03(c), (d) (Vernon 2003) (defining the culpable mental states of recklessness and criminal negligence).

Urbina's argument fails to recognize that a defendant can be guilty as a party only when he acts intentionally. *See id.* § 7.02(a)(2) ("A person is criminally responsible for an offense committed by the conduct of another if . . . acting with *intent* to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . .") (emphasis added); *Barnes v. State*, 56 S.W.3d 221, 236 (Tex. App.–Fort Worth 2001, pet. ref'd) (citing *Lawton v. State*, 913 S.W.2d 542, 554 (Tex. Crim. App. 1995)). "When a party is not the 'primary actor,' the State must prove conduct constituting an offense plus an act by the defendant done with the intent to promote or assist such conduct." *Christensen v. State*, 240 S.W.3d 25, 31 (Tex. App.–Houston [1st Dist.] 2007, pet. ref'd) (op. on reh'g) (citing *Beier v. State*, 687 S.W.2d

13

2, 3 (Tex. Crim. App. 1985) and *Miller v. State*, 83 S.W.3d 308, 313 (Tex. App.–Austin 2002, pet. ref'd)). The jury charge followed section 7.02(a)(2) by requiring that, to find Urbina guilty as a party, the jury must find beyond a reasonable doubt that Urbina intended to promote or assist Villarreal. We conclude that the trial court did not err by denying Urbina's requested lesser-included offense instructions. Urbina's sixth and seventh issues are overruled.

### V. VIOLATION OF THE RULE

In his eighth, ninth, tenth, and eleventh issues, Urbina argues that the trial court erred by failing to strike or disallow certain testimony due to violations of the Rule and by denying his motion for mistrial based on these same violations. *See* TEX. R. EVID. 614 (allowing the exclusion of certain witnesses upon a motion from either party or the court's own motion; commonly referred to as "the Rule"); *see also* TEX. CODE CRIM. PROC. ANN. art. 36.03 (Vernon 2007) (providing for the exclusion of certain witnesses "who for the purposes of the prosecution is a victim, close relative of a deceased victim, or guardian of a victim . . . ."); *Russell v. State*, 155 S.W.3d 176, 179 (Tex. Crim. App. 2005) ("The procedure of excluding witnesses from the courtroom is commonly called putting the witnesses 'under the rule.' The purpose of placing witnesses under the rule is to prevent the testimony of one witness from influencing the testimony of another, consciously or not.").

We use an abuse of discretion standard to review both a trial court's decision to allow testimony from a witness who has violated the Rule and a trial court's denial of a motion for mistrial. *See Minor v. State*, 91 S.W.3d 824, 829 (Tex. App.–Fort Worth 2002,

14

pet. ref'd) (citing *Guerra v. State*, 771 S.W.2d 453, 474-75 (Tex. Crim. App. 1988)); *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004). To determine whether a trial court abused its discretion in allowing a violation of the Rule, thereby harming the defendant, we utilize a two-step analysis. *Minor*, 91 S.W.3d at 829; *Potter v. State*, 74 S.W.3d 105, 110 (Tex. App.–Waco 2002, no pet.) ("In reviewing the trial court's decision to allow the testimony, we look at whether the defendant was harmed by the witness's violation; that is, whether the witness's presence during other testimony resulted in injury to the defendant.") (citing *Bell v. State*, 938 S.W.2d 35, 50 (Tex. Crim. App. 1996)).

First, we ascertain whether the witness is one who has "been sworn or listed as witness[ ] in the case and either [heard] testimony or [discussed] another's testimony" or is a person who was "not intended to be [a witness] and [is] not connected with the case-in-chief but who [has], due to events during trial, become [a] necessary [witness]." *Minor*, 91 S.W.3d at 829 (citing *Guerra*, 771 S.W.2d at 476). Second,

> we must determine: (1) whether the witness actually conferred with or heard the testimony of another witness without court permission; and (2) whether "the witness's testimony contradict[ed] the testmony of a witness he actually heard from the opposing side or corroborate[d] the testimony of another witness he actually heard from the same side on an issue of fact bearing upon the issue of guilt or innocence."

*Id.* (quoting *Loven v. State*, 831 S.W.2d 387, 399 (Tex. App.–Amarillo 1992, no pet.)). When both criteria are met, the trial court has abused its discretion. *Id.*

During the guilt/innocence phase of his trial, Urbina alleged that Rosie Rodriguez, the owner of The Gas Depot and a State's witness, had been speaking with witnesses involved in the case. *See* TEX. CODE CRIM. PROC. ANN. art. 36.03 (providing for the exclusion of the victim of the crime); *see also id.* art. 36.06 (Vernon 2007) (prohibiting

15

witnesses excluded under art. 36.03 from "convers[ing] with each other or with any other person about the case" and from "read[ing] any report of or comment upon the testimony in the case while under rule").  Rodriguez had been placed under the Rule, but after her testimony in the trial, she was overheard outside of the courtroom asking several other listed witnesses about the case.  The trial court held a hearing on the alleged violation of the Rule during which Rodriguez testified.  She stated that she had spoken with Margaret Gonzalez, Detective Alvarez, and an unidentified "lady in red" who was not a witness in the case.  Rodriguez claimed to have only asked who was testifying and who had testified and that no one would answer her questions.  She did not ask about "actual testimony"; she did not tell anyone about her own testimony; and no one answered her questions.

Under the first prong of the analysis, Rodriguez, Gonzalez and Detective Alvarez were witnesses who had "been sworn or listed as witnesses in the case and either [heard] testimony or [discussed] another's testimony . . . ."[6]  *See Minor*, 91 S.W.3d at 829.  Therefore, we must determine whether they "actually conferred with or heard the testimony of another witness without court permission."  *Id.*  There is no evidence that Rodriguez, Gonzalez, and Investigator Alvarez heard the testimony of other witnesses, and Rodriguez specifically stated that she did not discuss her own testimony with Gonzalez or Investigator Alvarez.  Assuming, without deciding, that Rodriguez "conferred with" Gonzalez and Detective Alvarez, we conclude that neither Gonzalez's nor Detective Alvarez's testimony corroborated or contradicted the testimony of witnesses they "actually heard."  *Id.*

---

[6] The "lady in red" was never identified as a witness and did not testify at trial.  Thus, the first prong of the analysis is not satisfied, and the trial court did not abuse its discretion on this ground.  *See Minor*, 91 S.W.3d at 829.

16

Urbina does not direct us to any corroborating or contradicting testimony pertaining to this issue in the record. *See* TEX. R. APP. P. 38.1(i). There is no evidence that Gonzalez and Detective Alvarez "actually heard" the testimony of any other witness, including Rodriguez. Gonzalez testified that Aguilar was the store clerk at The Gas Depot who helped her with some purchases shortly before he was killed. Her testimony did not corroborate or contradict the testimony of any other witness. Detective Alvarez, in pertinent part, testified that he did not pay any of Urbina's bills. This testimony did contradict Elvira Peza, Urbina's sister, who testified that Urbina told her that Investigator Alvarez had promised to help Urbina pay his bills. There is no evidence that Investigator Alvarez "actually heard" Peza's testimony or that Rodriguez "conferred with" him regarding Peza's testimony. *See Minor*, 91 S.W.3d at 829. Therefore, we conclude that the trial court did not abuse its discretion by not striking Rodriguez's testimony, by allowing Investigator Alvarez and Gonzalez to testify, and by denying Urbina's motion for mistrial. Urbina's eighth, ninth, tenth, and eleventh issues are overruled.

## VI. CONCLUSION

Having overruled all of Urbina's issues, we affirm the judgment of the trial court.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
19th day of August, 2010.

17